## UTAH LIGHT & TRACTION CO. v. STATE TAX COMMISSION OF UTAH.

No. 5874.  Decided May 14, 1937.  (68 P. [2d] 759.)

*George A. Critchlow, Geo. R. Corey,* and *A. C. Inman,* all of Salt Lake City, for plaintiff.

*Ned Warnock,* of Salt Lake City, for defendant.

FOLLAND, Chief Justice.

This is certiorari to the State Tax Commission to review a decision of the commission requiring petitioner to make return of its sale of fares and pay to the state a sales tax of 2 per cent on that portion "considered as trolley coach and gasoline bus fares." Plaintiff claims immunity from the tax by virtue of an exception in the Sales Tax Law. Chapter 63, Laws of Utah 1933, as amended by chapter 20, Laws of Utah 1933, Second Special Session. Section 4 as amended (by section 1), after the imposition of the tax on services of common carriers and other utilities, reads as follows:

" * * * provided, that said tax shall not apply to intrastate movements of freight and express or to street railway fares."

Plaintiff is, and for many years has been, the owner and operator of a street railway system in Salt Lake City and its environs. The system originated more than a half century ago with cars drawn on rails by mules and horses. When electric motors came into use, the system was rebuilt and transformed into one operated by means of electric trolley cars. For many years electricity was the exclusive motive power and all cars were operated on rails. Transportation methods have changed so that now the plaintiff operates street cars running on rails with electric power, trolley coaches with electric motor power but not using rails, and gasoline motorbuses operated without contact with either electric trolley wires or rails. On payment of one fare, passengers are permitted to transfer to other parts of the system irrespective of whether the fare originated on a motorbus, a street car, or trolley coach. The basic fare charged is 10 cents, but the car rider may buy 13 car tokens for one dollar, 3 for a quarter, a weekly pass for $1.25, or a book of 50 school tickets for $2, all of which entitle him to ride on any or all lines of the company without distinction as to type of vehicle or motive power. The Tax Commission now requires payment of the sales tax on all fares collected on mo-

torbuses and trolley coaches but not fares originating on street cars.

The first Sales Tax Law, chapter 63, Laws of Utah 1933, by section 4 taxed all services rendered by any utility of the state, and while such law was in full force and effect plaintiff reported all fares collected by it and paid the tax thereon. At the Second Special Session of the Legislature of 1933, the section was amended to read as follows:

"(b) A tax equivalent to two (2) per cent of the amount paid: (1) To common carriers, or telephone or telegraph corporations as defined by Section 76-2-1 of the Revised Statutes of Utah, 1933, whether such corporations are municipally or privately owned, for all transportation, telephone service, or telegraph service; provided, that said tax shall not apply to intrastate movements of freight and express or to street railway fares."

After the adoption of this amendment, plaintiff made no report of any fares collected by it to the State Tax Commission, and no effort was made by the commission to collect a tax thereon until the decision by this court in *Utah Rapid Transit Co.* v. *Ogden City*, 89 Utah 546, 58 P. (2d) 1, 3. The Tax Commission there concluded that the court's restrictive construction—that the statutory grant of power to cities respecting the construction, maintenance and operation of street railways did not include the power to own and operate motorbuses—required it to construe the exception of street railway fares from the sales tax as limited strictly to fares from street cars to the exclusion of fares paid on trolley coaches and motorbuses.

In construing the language of the amendment, it is for us to first determine the intent of the Legislature when it "excepted street railway fares" from the payment of the sales tax. For its meaning, we must look not alone to the letter of the statute, but to the intent of the Legislature and the purposes of the act. At the time the amendment was proposed and adopted, all street railway passenger fares were subject to the sales tax. What then was the purpose of the amendment? To relieve all car riders or only

some of them? There is not anything in the statute to indicate an intention to classify and grant immunity to one class of car riders and collect the tax from other classes based only on the type of vehicle or motor power used. We cannot think of any just or reasonable grounds for such a classification. About the only ground we can think of would be the fact that plaintiff pays a sales tax on all gasoline used to operate its motorbuses, but this reason should operate to reverse the contention and except motorbus passengers from payment of a tax on such fares.

If there is to be a classification, it, to be valid, must rest upon "some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 40 S. ▮ Ct. 560, 561, 64 L. Ed. 989. *State v. Packer Corporation,* 77 Utah 500, 297 P. 1013; *Id.,* 78 Utah 177, 2 P. (2d) 114, affirmed *Packer Corporation* v. *State of Utah,* 285 U. S. 105, 52 S. Ct. 273, 76 L. Ed. 643, 79 A. L. R. 546; *Board of Education* v. *Hunter,* 48 Utah, 373, 159 P. 1019; *Salt Lake City & Utah Light & Railway Co.,* 45 Utah 50, 142 P. 1067; *State* v. *Holtgreve,* 58 Utah 563, 200 P. 894, 26 A. L. R. 696. There is not anything in the statute from which it can be inferred that there was an intention to make any such discrimination between street car riders on the one hand, and trolley coach and motorbus riders on the other. Such a discrimination would be of doubtful validity. Our duty is to so construe the language of the statute, if possible, as to give effect to its obvious intention, and this intention we believe to be the relieving of all passengers, using the different kinds of vehicles employed in a street railway system, from the payment of the sales tax.

Scrutiny of the language of the statute leads to the same result. In section 4 (b), the tax is imposed as follows: "A tax equivalent to two (2) per cent of the amount paid: (1) To common carriers, or telephone or telegraph corporations as defined by Section 76-2-1 of the Revised Statutes of Utah,

1933," to which is added the proviso that such tax is not to apply to "street railway fares." Turning to section 76-2-1, we find the definition of common carriers "includes every railroad corporation; street railroad corporation; * * * engaged in the transportation of persons or property for public service over regular routes between points within this state." Subdivision 14. In the same section, the term "street railroad" is defined as including "every railway, and each and every branch or extension thereof, by whatsoever power operated, being mainly upon, along, above or below any street, * * * within any city or town," etc. Subdivision 7. It would seem to follow that when the phrase, "street railway fares," was used the legislative intent was that such language had reference to the fares paid on every street railway, "and each and every branch or extension thereof, by whatsoever power operated." This language negatives the idea of an intention to classify or discriminate against the users of motorbuses or trolley coaches and to favor the riders of street cars particularly where, as in plaintiff's case, the street car lines, bus lines and trolley routes are necessary parts of an integrated street railway system.

In the Ogden City Case, supra, the court held that Ogden City was not authorized to establish a municipally owned motorbus transportation system under and by virtue of the power contained in section 15-8-14, R. S. Utah 1933, to "construct, maintain and operate * * * street railways." The proposed municipal bus operation there under consideration is not comparable to petitioner's existing transportation system on which motorbuses and trolley coaches are used as integrated and complementary parts of a unified passenger street transportation system now existing and which has existed for many years. In the Ogden City Case, supra, we said:

"Defendants do not claim the authority to operate motor vehicles as an incident to the operation of a street railway. So far as appears, the city does not, and has not operated any street railway."

The trolley coach and motorbus substitutions in place of street cars on rails or as an extension of the rail system are ordinarily considered as being within the scope of street railway service and systems or auxiliary thereto. *City of Columbia* v. *Tatum,* 174 S. C. 366, 177 S. E. 541; *Russell* v. *Kentucky Utilities Co.,* 231 Ky. 820, 22 S. W. (2d) 289, 66 A. L. R. 1238; *Anderson* v. *Knoxville Power & Light Co.,* 16 Tenn. App. 259, 64 S. W. (2d) 204.

The order of the State Tax Commission requiring the reporting of trolley coach and motorbus fares and payment of the tax thereon is set aside and anulled.

EPHRAIM HANSON, MOFFAT, and LARSON, JJ., concur.

WOLFE, J. (concurring).

At the time I signed the opinion in the case of *Utah Rapid Transit Co.* v. *Ogden City,* 89 Utah 546, 58 P. (2d) 1, I had considerable doubt as to whether the term "street railway," as used in section 15-8-14, R. S. Utah 1933, and prior compilations, should not be held to be generic and construed to mean street transportation systems. The doubt still lingers. It is a little difficult to think that the Legislature intended to permit cities to construct expensive street railways but not to run comparatively inexpensive street buses. But the principle that a municipal corporation can only exercise those powers granted by express words, those necessarily or fairly implied or incident to express powers, and those essential to the declared objects and purposes, perhaps makes the doubt properly resolvable in favor of the decision in that case. In this case, however, we have no such principle controlling the construction of the language of the exception to the amendment of section 4 of chapter 63, Laws of Utah 1933, passed at the Second Special Session of 1933 (chapter 20, § 1). Here it is a matter of getting at the legislative intent. I entertain no doubt but that the Legislature did use the term "street railway" here to mean street transportation system. Anything else would make hob of the law. Therefore, I concur.