**City of Chicago, Appellant, v. G. Crane, Appellee.**

**Gen. No. 42,542.**

Opinion filed July 2, 1943.

BARNET HODES, Corporation Counsel, for appellant; J. HERZL SEGAL and ALPHONSE CERZA, Assistant Corporation Counsel, of counsel.

No appearance for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

May 1, 1942, a quasi-criminal complaint, by leave of court, was filed, charging that defendant, G. Crane, on January 24, 1942, violated certain sections of the Municipal Code of Chicago. Then follow more than 70 different ordinances that defendant is said to have violated and concluding, ''In violation of Chapter 27 Section 19–7 of the Municipal Code of Chicago.'' On the same day a quasi-criminal warrant was issued for the arrest of Crane and he was taken into custody June 2, 1942, when an order was entered postponing the trial and a number of other similar orders were thereafter entered. One of the orders recited that defendant elected to waive a jury and by agreement, the cause was submitted to the court, July 2, 1942, an order was entered which recites that the cause came on for trial before the court and by agreement of parties, a jury was waived; that defendant entered a

plea of not guilty, the court heard the evidence, found defendant not guilty, and he was discharged. Afterward, August 6, an order was entered denying plaintiff's motion to vacate the order discharging defendant.

From the report of the proceedings of the trial it appears that defendant is a lawyer and represented himself. At the opening of the trial he stated that he was appearing specially. "It is my contention that the court does not have jurisdiction over me and that sections 27–34.1 and 27–34.2 of the Municipal Code of Chicago are invalid." Thereupon counsel for the City stated that defendant was charged with having violated § 27–19 (7) of the Municipal Code of Chicago. The ordinances above mentioned by defendant provide, 27–34.1: "Whenever any vehicle shall have been parked in violation of any of the provisions of this chapter prohibiting or restricting parking, the person in whose name such vehicle is registered shall be subject to the penalty for such violation.

"27–34.2. Whenever any vehicle is parked in violation of the provisions of this chapter prohibiting or restricting parking and there is no person in attendance upon such parked vehicle to be arrested or served immediately with a notice to appear in court to answer the charge of such violation, any police officer observing such violation may attach to the vehicle used in such violation, a notification or ticket, so that the person in whose name such vehicle is registered may appear in the Municipal Court of Chicago on a day certain and at a designated court room, to be named in such notice and answer to the charge of such violation.

"It shall be unlawful for any person, other than the driver of the vehicle to which said notice is attached, to remove the same from said vehicle."

The other sections of the ordinances are (27–19 (7)): "It shall be unlawful for the operator of a

vehicle to stop, stand or park such vehicle in any of the following places, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or official traffic sign or signal: . . .

"(7) At any curb within fifteen feet of a fire hydrant."

After these ordinances were called to the attention of the court the parties stipulated that "on January 24, 1942 the defendant owned an automobile with Illinois license plates bearing number 172–951 and a Chicago vehicle tax emblem bearing number A608991; that on said day the said automobile was seen parked for thirty-five minutes five feet away from a fire hydrant located at the curb in front of the premises located at 408 N. Clark Street, in the City of Chicago. . . . That a police officer of the City of Chicago saw the defendant's car parked at said time and place and attached to said motor vehicle a ticket stating that there had been a violation of section 27–19 (7) of the Municipal Code of Chicago and directing the owner to appear in the Municipal Court on January 26, 1942." The stipulation further shows that defendant failed to appear and afterward a letter was sent to him (by a representative of the City) advising him that if he did not voluntarily appear within 48 hours a warrant would issue for his arrest.

At the conclusion of the stipulation defendant elected not to put in any evidence. The court, in rendering his decision said that the City had introduced no evidence against defendant that tended to prove he had violated the parking ordinance except that the license plates on the car showed it was owned by defendant [and defendant stipulated that he did own the car]. The court continuing said: "Counsel for the city stated no law or ordinance that could make the defendant liable for the act of illegal parking where the defendant had not committed it

or directed, save a certain ordinance passed on April 3, 1940. This ordinance purports to make the owner of a car liable whenever the car is illegally parked. Such an ordinance, as I see it, is completely without basis in law. There is no power delegated by the State Legislature to the city that enables it to make a defendant liable for a parking violation which he did not commit or authorize.''

The contention of defendant made at the opening of the trial (he had filed no brief in this court) seems to be that the court did not acquire jurisdiction over him because the police officer attached a ticket to the parked automobile. This is clearly a misapprehension. The City does not claim it obtained jurisdiction in this manner but says that afterwards a complaint was filed, a warrant issued and he was taken on the warrant and appeared in the trial of the case. Obviously the court had jurisdiction over him.

Section 27–19 makes it unlawful for the *"operator"* of a vehicle to park it at any curb within 15 feet of a fire hydrant, while § 27–34.1 provides that when any vehicle shall have been parked in violation of § 27–19 (7) ''the person in whose name such vehicle is registered shall be subject to the penalty for such violation.'' We are of opinion that under the stipulated facts, defendant violated the ordinance and was liable, and the court erred in discharging him.

When it appeared from the stipulation of facts that defendant owned the car that was parked near the fire hydrant, the City made out a *prima facie* case against him. *Howard v. Amerson,* 236 Ill. App. 587; *Kavale v. Morton Salt Co.,* 329 Ill. 445, affirming this court in the same case, 242 Ill. App. 205. Although these two cases were civil actions and the instant case is quasi-criminal, [*City of Chicago v. Dickson,* 221 Ill. App. 255] we think the rule is applicable.

In *Commonwealth v. Ober,* 286 Mass. 25, defendant was charged with parking or allowing to be parked,

an automobile registered in her name contrary to the regulation adopted by the Boston Traffic Commission. She was found guilty on each of the two counts and sentenced to pay a fine of $5 on each count. The police officer who saw the parked car, attached a tag to it on which appeared the registration number of the automobile, the day, time and place when and where the car was parked and tagged and also a printed statement that the automobile had been tagged for a violation of traffic regulations, that is, parking in a restricted space, and requested her to bring the tag to the police station within 48 hours. Notice of the tagging was sent by the traffic bureau of police to defendant at her address. The tags were never returned and nothing was heard from defendant. The Court said: "There was no evidence as to who left or parked the defendant's automobile at the times and places set forth in the complaints or who took it away." At the close of the evidence defendant requested the court "to instruct himself" that "(3) 'The burden is upon the Commonwealth to prove that the defendant parked her car in the premises alleged in the complaints.' . . . (7) 'The court should rule as a matter of law that ownership of a motor vehicle is no evidence that the said motor vehicle was parked illegally by the defendant.'" The court refused these and other requests. The court in refusing request numbered 7, in its opinion said: "he [the trial judge] had in mind that the rules alleged to have been violated do not in terms require that the parking shall be done by the defendant."

And continuing: "There are many modern instances of acts which are made criminal by legislation where there is no intent or criminal knowledge by the offender. These offenses are commonly described as *mala prohibita* as distinguished from offences which are *mala in se*. . . .

"The legislation here under consideration belongs to the class of statutes where the General Court, legislating for the common welfare, has put the burden upon the individual of ascertaining at his peril whether his conduct is within the scope of the criminal prohibition. The moral turpitude, the motive which prompts the illegal act, and the knowledge or ignorance of its criminal character are immaterial on the question of guilt." And the court there further said:

"In the instant cases the public mischief to be averted is obvious. The inconvenience of keeping watch over parked vehicles to ascertain who in fact operates them would be impracticable, if not impossible, at a time when many vehicles are parked. We think the rules and regulations of the Boston Traffic Commission . . . were framed and intended to cover and make punishable any violation of secs. 31 (5), 19 and 17 (4) by the owner of a registered vehicle, whether the particular violation or violations were by the owner or were by a person allowed, permitted or suffered by the owner of any vehicle registered in his name in any street, way, highway, road or parkway under the control of the city of Boston. In a word this case is one of the unusual instances where a person at his peril must see to it that the rules and regulations are not violated by his act or by the act of another. The reported evidence established a *prima facie* case which was not met by evidence offered by the defendant."

In *Commonwealth v. Kroger*, 276 Ky. 20, it was held that the ordinance of a city providing that violation of it with a motor vehicle shall be *prima facie* evidence that violation was committed by or with the owner's authority or permission, was valid. In that case the car was parked in violation of law and a ticket was attached to it. Defendant elected not to testify. The court held the ordinance valid and said: "independently of the enacted presumption, the cir-

cumstances stipulated and agreed to are amply sufficient under the general law of evidence . . . to support a conviction.''

And in *People v. Kayne*, 286 Mich. 571, the court held that an ordinance which provided that the license plates displayed on an automobile would constitute a *prima facie* presumption that the owner parked the vehicle, and said: ''A reasonable assumption may be made that the person who owns an automobile operates and parks it. Of course, this is not a conclusive presumption; but in the great majority of cases, such is the fact. The provisions of the ordinance, therefore, that the owner of a motor vehicle is presumed to be *prima facie* the person who operates it and parks it in the public highway is not unreasonable.''

In *People v. Marchetti*, 276 N. Y. S. 708, defendant was convicted of violating a regulation of the police department of the city of New York respecting parking of motor vehicles and he appealed. The judgment of conviction was affirmed. In that case it was charged that defendant parked an automobile in violation of the directions on signs of the police department displayed on a public highway. Defendant was found guilty and a fine of $5 imposed. Defendant was the owner of the vehicle parked contrary to the traffic regulations. He contended that the trial court had not acquired jurisdiction of him but the court said he appeared in person and took part in the trial and therefore submitted himself to the jurisdiction of the court. The court there said: ''If this judgment is to be sustained, it is necessary for us to hold that the proved fact of the ownership of the automobile by the appellant raises the presumption that the car was under the control of the appellant, and that therefore he is responsible for having violated the provision of the ordinance against illegal parking. Without this presumption no prima facie case has been made out.

"The prosecution contends that the ownership of the automobile is so closely connected with the operation and control thereof that the owner, in the absence of other evidence, may be presumed to be the operator. . . .

"Granting that the mere ownership of an automobile is not evidence of exclusive control, still it is well within the owner's power to produce evidence as to who was or was not in control, evidence which the people are in most cases unable to present. . . . given evidence of ownership and illegal parking, the prosecution may rest their case upon a presumption of guilt, making it incumbent upon the defendant to produce evidence that would negative this presumption."

In the instant case, § 27–34.1 provides that whenever any vehicle is parked in violation of the chapter of the ordinance, "the person in whose name such vehicle is registered shall be subject to the penalty for such violation." We think the city made out a *prima facie* case. Moreover under the traffic regulations referred to in *Commonwealth v. Ober,* 286 Mass. 25, defendant would be liable even though he did not park or permit the car to be parked contrary to the traffic regulations. And as said in that case, the purpose of the ordinance is to prevent public mischief.

It is common knowledge that many thousands of automobiles are parked in the streets at all times and it would be inconvenient and impossible for a municipality such as Chicago to keep watch over parked vehicles to ascertain who in fact operated or parked them.

For the reasons stated, the judgment of the municipal court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT and NIEMEYER, JJ., concur.