# LEWIS v. UTAH STATE TAX COMMISSION et al.

No. 7311. Decided May 26, 1950. (218 P. 2d, 1074)

See 53 C. J. S., Licenses, Sec. 31.

*Dan S. Bushnell*, Salt Lake City, for plaintiff.

*G. Hal Taylor*, Salt Lake City, for defendants.

WOLFE, Justice.

Certiorari to review a deficiency sales tax assessment made by the defendant, State Tax Commission, against the plaintiff, Orson Lewis, doing business as Lewis Bros. Stages. The only question to be determined is what construction should be given to the term "street railway fares" as that term is used in 80—15—4, Utah Code Ann. 1943, which provides:

"From and after the effective date of this act there is levied and there shall be collected and paid:

"(a)  *  *  *

"(b) A tax equivalent to two per cent of the amount paid:

"(1) To common carriers or telephone or telegraph corporations as defined by section 76—2—1, Revised Statutes of Utah, 1933, whether such corporations are municipally or privately owned, for all transportation, telephone service, or telegraph service; *provided*, that said tax shall not apply to intrastate movements of freight and to express or *street railway fares* or to the sale of newspapers, and newspaper subscriptions." (Italics added except the word "provided."

The only portion of the deficiency assessment which the plaintiff contests is that part of the assessment which is based upon the plaintiff's failure to collect and pay a sales tax upon fares collected by him for the transportation of passengers by motor buses between Salt Lake City and a United States army camp at Kearns, Utah. The plaintiff's operation between these points was commenced pursuant to authority given him by the Public Service Commission of Utah. The certificate of convenience and necessity issued by that Commission authorized the plaintiff to pick up passengers destined to Kearns in Salt Lake City and at any point along the route to Kearns and on the return trip to carry passengers from Kearns to any place along the route to downtown Salt Lake City. In addition, the Public Service Commission later orally gave him the authority to pick up and discharge passengers at Taylorsville and at the Kalunite Plant on 33rd South, both of which

are intermediate points along the route outside the city limits of Salt Lake City. The plaintiff resists the assessment upon the ground that the sales tax act specifically exempts "street railway fares" from the operation of the sales tax and that this exemption applies to the fares received by the plaintiff in his operation of motor buses between Salt Lake City and Kearns.

We have heretofore considered what constitutes a "street railway". The first occasion was in *Utah Rapid Transit Co.* v. *Ogden City et al.*, 89 Utah 546, 58 P. 2d 1, 3. In that case, Ogden City contended that the authority conferred upon it by Article 11, Sec. 5, subdiv. (b), of the Const. of Utah and by sec. 15—8—14, Revised Statutes of Utah, 1933, to construct, maintain, and operate a street railway impliedly conferred upon it the authority to operate motor-buses. We held that we were unable to concur in such a construction, stating:

"Street railways and motorbuses are both now in common use as a means of carrying passengers, but to say that the former means of transportation fairly includes the latter is to extend the import of the word 'railway' far beyond its meaning. * * * At the time the Legislature conferred upon the cities in this state authority to own and operate street railways there were other means of transporting passengers, Horse-drawn buses or hacks were in common use when the act under review was passed, yet the lawmaking power did not see fit to permit the cities to own and operate such means of transportation. If the Legislature intended to empower cities of this state to own and operate any and all means of conveyance, it would have been an easy matter to have so provided."

One year after the Utah Rapid Transit case was decided, the necessity again arose to construe the meaning of "street railway" in *Utah Light and Traction Company* v. *State Tax Commission*, 92 Utah 404, 68 P. 2d 759, 760. In the latter case the Light and Traction Company was operating a transportation system in Salt Lake City and its environs which utilized street cars running on rails with electric power, trolley coaches with electric motor power but not using rails, and gasoline motor buses operated without contact with either electric trolley wires or rails.

The Tax Commission had construed and applied the exemption of "street railway fares" to apply only to fares collected on street cars, and required payment of sales tax upon fares collected on trolley coaches and motor buses. We held that the exemption applied to fares paid on all three types of vehicles, basing our decision on two grounds: First, that there was

"not anything in the statute [exempting street railway fares] from which it can be inferred that there was an intention to make any such discrimination between street car riders on the one hand, and trolley coach and motorbus riders on the other."

We stated that such distinction would be of doubtful validity and that we believed the intention of the Legislature was to relieve all passengers using the different kinds of vehicles employed in a street railway system from the payment of the sales tax; Secondly, that the definition of "street railroad" in 76—2—1, subdiv. (7), R. S. Utah, 1933, to wit,

"'street railroad' includes every railway, and each and every branch or extension thereof, by whatsoever power operated * * *",

likewise negatives the idea of a legislative intention to classify and discriminate against the users of the different vehicles utilized in an integrated street railway system. We also noted that in the Utah Rapid Transit case the court pointed out that Ogden City did not claim the authority to operate motor vehicles as an incident to the operation of a street railway, and that so far as appeared, the city did not and had not operated any street railway.

In the Utah Rapid Transit case there were reasonable grounds for drawing the inclusion-exclusion line so as to include a railbound street transportation system and exclude a non-railbound street transportation system. We were there dealing with a legislative grant of power to a city which we held should be strictly construed. But in the Light and Traction case, viewed in the light of the purposes to be accomplished by the exemption from the

sales tax, there were no reasonable grounds for classifying between a railroad and a non-railbound street transportation system, and hence such classification would not be read into the act. In that case the words "street railway" were descriptive of a street transportation system. The word "railway" was superfluous when the purposes of the act were kept in mind, for it was unreasonable that the legislature would want to, because of the inconvenience involved in collecting the tax, exempt fares for transportation on vehicles run on rails, but not exempt fares charged by the same company for transportation on buses or other types of non-railbound vehicles employed by the company for exactly the same type of service performed by the company, to wit, the public transportation of passengers. In the instant case we are dealing with a transportation system which had the authority only to do an interurban business. The plaintiff does not contend that he could pick up and discharge passengers intra city within the city limits of Salt Lake City. On the out-bound trip from his depot in Salt Lake City, his first stop was at 33rd South which is outside the city limits. From 33rd South to Kearns it appears that he picked up and discharged passengers at frequent stops if the passengers so requested. On the inbound trip from Kearns, passengers were picked up at Kearns and intermediate points to 33rd South. From 33rd South to his depot in downtown Salt Lake City, passengers were discharged at any point, but not picked up.

It is reasonable to think that in exempting fares from the sales tax, the legislature wanted to exempt all fares charged on an urban system of transportation even though the system might in some cases extend beyond the limits of the city regardless of what types of vehicles were used in the system. But where an operator was not operating an urban transportation system, but an interurban system, did the legislature intend to

exempt such fares? The answer is that it did not because it used "street railway" in its generic sense, i. e. meaning an urban street transportation system. Sec. 76—2—1 (7), U. C. A. 1943, provides:

"The term 'street railroad' includes every railway, and each and every branch or extension thereof, by whatsoever power operated, being mainly upon, along, above or below any street, avenue, road, highway, bridge or public place *within any city or town,* * * *." (Italics added.)

In the instant case, the plaintiff did not conduct an intraurban business. Had he been doing an intraurban business with some incidental and minor interurban runs, the case might have been different. The plaintiff's business was predominately carrying military personnel from downtown Salt Lake City to Kearns and vice versa. Viewed in the light of the purposes of the exemption, i.e. to serve the convenience of collecting sales tax from passengers, there is a differentiable basis for excluding companies doing only an interurban business and including those companies doing a predominately intraurban business.

When the passage is interurban, the passengers are carried a distance long enough to allow the bus driver to collect the tax as the passengers board the bus without substantially slowing up the overall operation. Once a bus load of passengers had been picked up, there would be no further delay caused by collecting sales tax. But when the passage is intraurban, the distance passengers are carried is comparatively short, and with passengers getting on and off at every block, the driver would be perpetually making change into pennies and mills so that the sales tax could be collected on each fare. This would produce a material slowing up of traffic.

The plaintiff argues that his operation comes within the purpose of the legislative exemption because of the fact that seventy per cent of the fares he collected were collected on the buses and that the volume of passengers being transported by him amounted to as high as 13,000 per day and as high as 2,000 per hour during

rush hours. We do not contend that if the plaintiff had collected sales tax on each fare paid that his operation would not have been somewhat slowed up. However, we take the view that the legislature in creating the exemption had in mind only urban street transportation systems where the passengers would be carried from one point to another within the limits of a city, and not street transportation systems like that operated by the plaintiff which was predominately, at least, an interurban system.

The plaintiff further contends that his operation to Kearns was similar to a transportation system formerly conducted by the Airway Motor Coach line which served many small communities lying outside the limits of Salt Lake City, and that the Tax Commission did not require the Airway lines to collect sales tax on the fares it collected. Assuming the plaintiff's assertion to be true, it affords no basis for exempting the plaintiff from the tax. An erroneous construction of a statute made by an administrative body is not binding upon this court. *Utah Hotel Co.* v. *Industrial Comm.*, 107 Utah 24, 151 P. 2d 467, 153 A. L. R. 1176; *E. C. Olsen Co.* v. *State Tax Comm.*, 109 Utah 563, 168 P. 2d 324.

We recognize that the deficiency assessment made by the Tax Commission creates a hardship upon the plaintiff because the latter cannot now collect that tax from the passengers he transported and in view of the testimony of the plaintiff and his attorney that the former was verbally assured by members of the Tax Commission that his operation between Salt Lake City and Kearns would come within the exemption. But while we are in sympathy with the plaintiff's position, we are unable to aid him and at the same time to honestly perform our duty as members of this court.

The order of the Tax Commission is affirmed. Costs to the defendants.

LATIMER and McDONOUGH, JJ., concur.

PRATT, C. J., dissents.

WADE, Justice ( dissenting).

I agree with the majority opinion that the term "street railway fares" as used in Sec. 80—15—4, U. C. A. 1943, should be given a liberal construction to effectuate the spirit and intent of the legislation rather than a literal construction, but I cannot agree with its conclusion that the plaintiff's activities did not bring it within that construction as outlined in the prevailing opinion.

If we admit, as we do, that the term "street railway" as used in the statute exempting such systems from sales tax has no reference to a system whose transportation of passengers is based on railbeds then there is no legal or reasonable distinction between the system used by plaintiff and that of a city lines system in its service to outlying communities which admittedly is exempt from such taxes. Although part of such system operates exclusively within the limits of a city and takes on and discharges passengers within those limits, a number of its lines may serve outlying communities in exactly the same manner in which Lewis Bros. Stages served Kearns, and under the prevailing opinion the passengers receiving such service would be exempt from paying sales tax. For example, the Salt Lake City Line's buses which serve Holladay and other outlying communities will stop and pick up passengers at designated stops within the city on its trip to Holladay but will not discharge such passengers at any point within the city and on its trip into the city will discharge passengers at various points but will not pick up passengers within the city. This is exactly the same procedure which was used by Lewis Bros. Stages in its service to Kearns. The fact that the service to Holladay and other outlying communities is given by buses which belong to

a company which also serves a city and which at one time in its history transported passengers over railbeds in that city, does not make it more difficult to collect sales taxes from passengers on such buses than it would on the buses of plaintiff. The collection of such taxes from the patrons of those wishing to go to Kearns and from patrons desiring to go to other outlying communities serviced by Salt Lake City Lines would be just as convenient or inconvenient in the one instance as in the other. The passengers are carried just as long a distance on the buses of the Salt Lake City Lines, and in some instances a much longer distance, and the motorman could just as easily collect the taxes from such passengers as in the case of the interurban company. Such collections on the one system would not slow up overall operations any more than it would on the other.

Section 76—2—1 (7), U. C. A. 1943, provides:

"The term 'street railroad' includes every railway, and each and every branch or extension thereof, by whatsoever power operated, being mainly upon, along, above or below any street, avenue, road, highway, bridge or public place within any city or town, * * * but * * * shall not include a railway constituting or used as a part of a commercial or interurban railway."

The first part of this section which the prevailing opinion quotes no doubt was intended to make it clear that the term "street railroad" includes every railway and every branch and extension thereof which operates mainly along, above or below streets, avenues, roads, highways, bridges, and public places entirely within the limits of any one city or town. But this does not exclude by such definition a transportation system which operates partly within a city and beyond the city limits into the surrounding suburbs, such as this case presents. The last part does expressly exclude from the meaning of that term a railway which is used as a part of a commercial or interurban railway, which I presume means a railway which transports goods

as distinguished from passengers or which operates from one city to another as distinguished from one which operates within a city and its suburbs. The term "interurban" is ordinarily used to mean going from one city to another as distinguished from going from a city into a suburb thereof even though such suburb might be an incorporated city or town as distinguished from an unincorporated town.

It is important that courts make only distinctions which are clear and understandable and with reasonable basis in fact for such differences, and not interject fine distinctions which are hard to understand and which do not tend to effect the objects of the statute nor promote justice, as required by section 88—2—2 U. C. A. 1943. Otherwise, we will constantly be met with injustices caused, as in this case, because the members of the bar are unable to accurately advise their clients of what their rights and liabilities are.

Notwithstanding the distinctions claimed it is obvious that *Utah Rapid Transit Co.* v. *Ogden City,* 89 Utah 546, 56 P. 2d 1 and the *Utah Light and Traction Company* v. *State Tax Commission,* 92 Utah 404, 68 P. 2d 759, are contrary in principle and from the former decision no one could foresee the result of the latter. With the principles of the latter decision I fully agree because I think it effects the objects of the statute and promotes justice, and is in harmony with *Union Portland Cement Co.* v. *State Tax Comm.,* 110 Utah 152, 176 P. 2d 879 and *Spangler* v. *Corless,* 61 Utah 88, 211 P. 692, 28 A. L. R. 72.

The only possible distinction between the operations which are notoriously carried on by the Salt Lake City Lines without being taxed and which, as I understand it, the prevailing opinion approves, and the operation of the Lewis Bros. Stages in the instant case, sought to be taxed, is that the Salt Lake City Lines operate a street trans-

portation system, part of which is entirely routed within the city limits. I do not think that fact justifies this distinction, nor do I think that section 76—2—1 (7), quoted above, requires that the tax be collected because the line runs beyond the city limits.

In my opinion to hold that patrons of the Salt Lake City Lines who are transported beyond the city limits should be exempt from sales taxes, while patrons riding under identical circumstances on plaintiff's buses under the circumstances of this case should be subject to the tax, is discriminatory and such an interpretation of our statute makes it unconstitutional. I therefore dissent.