## NASFELL v. OGDEN CITY.

No. 7628.   Decided October 27, 1952.   (249 P. 2d 507.)

See 60 C. J. S., Motor Vehicles, sec. 28. Conflict between statutes and ordinances as to automobiles. 37 Am. Jur., Municipal Corporations, sec. 165; 147 A. L. R. 522.

*Hugh E. Dobbs,* Ogden, for appellant.

*Clyde C. Patterson, Paul Thatcher, Jack A. Richards,* Ogden, for respondent.

HENRIOD, Justice.

Appeal from a declaratory judgment holding the following Ogden City ordinance valid:

Sec. 27g67: Owner prima facie responsible for illegal parking.

"The presence of a vehicle in or upon any public street or highway in Ogden City stopped, standing or parking in violation of any ordinance of Ogden City, shall be prima facie evidence that the person in whose name such vehicle is registered as owner committed or authorized the commission of such violation."

The judgment is reversed with costs to appellant.

This case is here on stipulated facts. A car registered in plaintiff's name was parked in front of a parking meter between 9 a. m. and 8 p. m. A signal indicated the space was illegally occupied and a policeman place a notice of violation on the windshield of the car. Complaint was filed and summons served on plaintiff who pleaded not guilty. Before decision, he asked for a declaratory judgment in the district court, challenging the validity of the ordinance. The court ruled against plaintiff, holding the ordinance valid.

Under the decisions of this court Ogden has no express or implied power to pass the ordinance in question. Cities in Utah derive their powers through express legislative grant,[1] and we look to our own authority in testing Ogden's powers to pass the ordinance. Counsel for Ogden cites but one Utah case[2] which we do not believe controlling here, and looks for support of his position to sister states where fountains of power radically may differ from our own. Repeatedly we have denied to cities implied powers which had far greater proximity of pur-

[1]*Walton* v. *Tracy Loan & Trust Co.*, 97 Utah 249, 92 P. 2d 724; *Wadsworth* v. *Santaquin City*, 83 Utah 321, 28 P. 2d 161; *Salt Lake City* v. *Sutter*, 61 Utah 533, 216 P. 234.

[2]*Gronlund* v. *Salt Lake City*, 113 Utah 284, 194 P. 2d 464.

pose in implementing express powers given, than the implied power claimed here bears to the generic power granted by the legislature.

Ogden assumes that because cities have been given the power to regulate streets and the parking of vehicles for a fee,[3] together with general power to enforce such powers, they necessarily have the implied power to pass an ordinance establishing a rule of evidence binding on the courts. Such assumption does not stand the test of logic, nor is it sustained by this court. Power to pass an ordinance establishing a rule of evidence binding on the courts is not granted to cities in express words, nor can it be fairly implied from, nor is it incident to, the powers expressly given. Neither is it essential to the accomplishment of the objects and purposes of the powers granted.

We are committed to the principle that cities have none of the elements of sovereignty,[4] that

"any fair, reasonable, substantial doubt concerning the existence of the power is resolved by the courts against the corporation (city) and the power denied,[5]"

and that grants of power to cities are strictly construed to the exclusion of implied powers not reasonably necessary in carrying out the purposes of the express powers granted.

We have held before that cities have no implied power to pass an ordinance requiring barber shops to close after certain hours, though the legislature granted them express power to license, tax and regulate shops and to pass all

---

[3]Title 57-7-85, U. C. A. 1943: "(a) The provisions of this act * * * shall not be deemed to deprive said authorities of existing powers with respect to streets * * * in: (1) Regulating the standing or parking of vehicles including the requirement for payment of a parking fee * * *." See also, 15-8-11, 15-8-30 and 15-8-84, U. C. A. 1943.

[4]*Utah Rapid Transit Co.* v. *Ogden City,* 89 Utah 546, 58 P. 2d 1.

[5]1 Dillon, Municipal Corp., 5th ed., p. 448, Sec. 237; *Salt Lake City* v. *Revene,* 101 Utah 504, 124 P. 2d 537.

ordinances necessary to carry out such express power. We said that

"It has been repeatedly stated by this court 'that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable."[6]

We have held that a city had no implied power to pass an ordinance making possession of liquor an offense, where the legislature granted it the express power

"to license and regulate, or prohibit the manufacturing, selling, giving away, or disposition in any manner of any intoxicating liquors."[7]

Also, that cities have no implied power to sell gas under a statute granting them the express power to appropriate money for any purpose which in the judgment of the Board of Commissioners or City Council would provide for the safety, preserve the health, promote the prosperity, improve the morals, peace, order, comfort and convenience of the inhabitants of the city.[8] So firm have we stood in construing express grants of power to cities as to conclude that cities have no implied power to prevent billiard playing, where the legislature granted express power to

" 'license, tax, regulate, and suppress billiard * * * tables * * * used for similar purposes'."[9]

We have gone so far as to hold that statutory authority for cities "to construct, maintain, and operate street railways" carried with it no implied power to operate motorbuses.[10]

[6]*Salt Lake City* v. *Revene,* supra [101 Utah 504, 124 P. 2d 538.]

[7]*Salt Lake City* v. *Sutter,* supra [61 Utah 533, 216 P. 235].

[8]*American Petroleum Co.* v. *Ogden City,* 90 Utah 465, 62 P. 2d 557.

[9]*American Fork City* v. *Robinson,* 77 Utah 168, 292 P. 249, 250.

[10]*Utah Rapid Transit Co.* v. *Ogden City,* supra [89 Utah 546, 58 P. 2d 3].

In emphasizing our viewpoint, we held,—not at all inconsistently, that where a city ordinance presuming to enlarge a vested right by implication is not involved, but a state statute is, greater latitude of interpretation is given, and that in such case "street railways" impliedly may include "motorbuses."[11] Later we noted the distinction by reaffirming the principle that grants of power to municipalities should be construed strictly.[12]

The policy of our law thus is settled. The rule promotes a wholesome, uniform orderliness among the municipalities of the state. Its wisdom is not open to question at this date, and we ought not depart from it lightly. This case falls within the decisions of this court, and the conclusion is inescapable that Ogden's claim of having an implied power to pass the ordinance mentioned is untenable. The authorities cited which assert that such an ordinance is necessary in order properly to regulate traffic have no magic here, since already we have decided the matter on the basis of scope of power. Ignoring our previous pronouncements would breathe life into an ordinance claimed to be wholesome, but in so doing we would place the proverbial cart before the horse, since the power to act must be established before approval can be given to the legislation.

McDONOUGH, J., concurs.

WADE, J., concurs in the results.

WOLFE, Chief Justice (concurring in the results).

I concur in the results of the opinion of Mr. Justice HENRIOD insofar as it holds that Ogden City has no express or implied power to pass the ordinance in question. I agree to such holding on the ground that power to pass an ordinance establishing a rule of evidence binding on the

---

[11]*Utah Light & Traction Co.* v. *State Tax Commission,* 92 Utah 404, 68 P. 2d 759.

[12]*Lewis* v. *Utah State Tax Commission,* 118 Utah 72, 218 P. 2d 1074.

courts is not granted in express words nor can it be fairly implied from nor is it incident to the powers expressly given, nor is it essential to the accomplishment of the objects and purposes of the powers granted.

But I do not think in some of our holdings we have too narrowly construed the granted powers. See *Utah Rapid Transit Co.* v. *Ogden City,* 89 Utah 546, 58 P. 2d 1.

Having concluded that Ogden City does not possess the power to pass the ordinance, it is not imperative that we express an opinion on the due process aspect of the matter. But this is one of those rare cases where a city may, on the eve of a legislative session, be left helpless in one phase of traffic regulation, to wit, the enforcement of rules against over or proscribed parking. If the Justices express themselves as to the basis and extent to which the legislature may go without running athwart of the Constitution, it may guide the next legislature in the passage of legislation applicable to the State at large, or in the giving of all cities of the State powers to pass uniform ordinances for the enforcement of rules against overparking. While all such matters are strictly obiter to this opinion and must be so understood, this is an instance when guidance is indicated.

There cannot be sufficient police officers to keep watch over every parked car to ascertain who parks it and it is doubtful whether citizens would welcome an inquiry by police officers as to who was parking it. The problem then is essentially one of conveniently and without incommensurate difficulty obtaining information as to the person guilty of overparking or parking in a proscribed place. These problems usually arise incident to regulation—regulation of automobile traffic. They are usually solvable by use of the mechanism of a presumption especially where the connection between the known fact and the fact desired to be ascertained does not necessarily permit of logical inference; that is, where the mind cannot necessarily infer one fact

by logical deduction or inference from the more foundational fact.

I think the providing by law of presumptions cannot be outside of the scope allowed by our State and Federal Constitutions, where reasonable convenience and the exigencies of the situation require it for the purpose of reasonable enforcement of regulatory law.

Certainly legislation which made the possession of liquor found on the person of a defendant evidence that such possession was for the purpose of sale was not unconstitutional in the view of laws prohibiting the sale of liquor absolutely under certain conditions within certain territories, even though it cast upon the defendant the duty of meeting the evidence or otherwise to probably suffer conviction. Our State and Federal Constitutions were not intended to rule out the application of common sense in efforts to strike a balance between preserving individual liberties and the protection of society.

I think we have here a situation fundamentally concerned with traffic regulation. There is only so much downtown parking space in our cities. If there is no way to compel the overparker to be subjected to a penalty for violations, enforcement of ordinances directed against overparking cannot be enforced.

The matter is, therefor, not essentially one of dealing with a crime. In these petty cases of parking violations, fines are levied as sanctions rather than punishments. I think it unrealistic to treat them as if they were crimes calling for the application of the rules designed for the protection of liberties. The penalties do not involve imprisonment and deal with infractions where even the vernacular of criminal law is not applicable because the objective is not aimed at preventing a wrong against the state or against society, but to effectuate traffic regulation and administration. The violations hardly seem to rise to the level of

*mala prohibita.* The fines are not punishment for crimes but sanctions.

True, out of the effort to enforce the regulation may come an offense. And this may call even for imprisonment as a more remote result.

Approaching the matter from another angle, more than once in my career on this bench I have called attention to the highly important matter of so interpreting the Constitution as to maintain a balance between protection of society and protection of the rights of individuals constituting our society. Few rights indeed are absolute, and wise judicial policy must recognize that this balance, although in unstable equilibrium, is governed by tacitly recognized play of such judicial policy. It was said in *State* v. *Mason*, 94 Utah 501, 78 P. 2d 920, 925, 117 A. L. R. 330:

"This balance between police powers and due process is, therefore, more or less in a state of unstable equilibrium, changing with sociological and economic developments. As the protection of the due process clause recedes, the police power advances [or perhaps as the police power advances the protection of the due process clause recedes]. There is always articulation between the two."

For instance, as illustrative of the instability of this changing balance between advancing police power and receding due process, we may take the case of enforcement of laws or city ordinances relating to the regulation of parking of motor vehicles, more definitely the case of the difficulty of enforcing an ordinance against parking overtime or in a proscribed area. Granted the city has the power to enact an ordinance establishing a rule of evidence binding on the courts, or the legislature has passed a state law applicable to proscribed or excess parking anywhere in the State, how can the enforcement officers make effective the administration of such law?

I opine that an ordinance passed under State granted power which provides that a judicial tribunal having jurisdiction may find an owner or a person registered as owner

of an automobile guilty of the charge of excess or illegal parking in a proscribed area when it appears from the evidence that the car of such registered owner has been found to have been overparked or parked in a proscribed area and such owner, after reasonable notice of the fact of such excess or proscribed parking, fails to bring forth satisfactory proof that he is not the owner, or if the owner, that such car was not overparked or was parked in a proscribed area by him or at his direction, is constitutional.

While such procedure places upon an owner the obligation to free himself from a law imposed presumption of guilt arising from the fact that he appears in the records as the registered owner, I think, in the interests of traffic regulation, such presumption may be indulged without running afoul of constitutional objections respecting failure to accord due process.

CROCKETT, Justice (dissenting).

I dissent.

It should be here recorded that the appellant's primary attack upon this statute was that it impairs his constitutional liberties: (a) by depriving him of his presumption of innocence and (b) by compelling him to give testimony against himself. The court refused to sustain those contentions.

The prevailing opinion is now narrowed to the one proposition: That the ordinance does not come within either the express or implied powers of Ogden City.

The Chief Justice suggests in his concurrence that such an ordinance would be valid if expressly authorized by the legislature; it would follow that the legislature could enact a valid statute of similar import. With this, I agree. But I also go further, believing that the ordinance itself is valid, being within the authority of the City fairly implied from powers expressly granted.

A city is not limited to powers expressly spelled out, but necessarily possesses those fairly implied in, or incident to, the powers expressly conferred. 1 McQuillan Municipal Corporation, 2d Ed. Sec. 367. The following sections of Utah Code Annotated 1943, all referring to powers of cities, are pertinent to our inquiry into the authority of the city to enact the ordinance in question:

Sec. 15-8-11:

"They [cities] may regulate the use of streets, * * * sidewalks, cross-walks * * *."

Sec. 15-8-30:

"They may regulate the movement of traffic on the streets, sidewalks and public places * * *."

By a later enactment, in our motor vehicle code, Sec. 57-7-85, our Legislature provided:

"(a) The provisions of this act * * * shall not be deemed to deprive said [local] authorities of existing powers with respect to streets * * * in:

"(1) *Regulating* the standing or *parking* of vehicles including the requirement for *payment of a parking fee* * * *." [Emphasis added.]

This reference to and recognition of the power of cities to require the payment of a parking fee is a legislative construction of a prior grant of power to the city plainly indicating that the legislative intent is for the cities to have power to regulate parking and to charge fees therefor.

Sec. 15-8-84, referring to the general powers of cities, provides:

"They may pass all ordinances and rules, and make all regulations, not repugnant to law, necessary for carrying into effect or discharging all powers and duties conferred by this chapter * * * and may enforce obedience to such ordinances with such fines or penalties as they may deem proper * * *."

Regulation of parking is a part of traffic regulation. See *People* v. *Rubin*, 284 N. Y. 392, 31 N. E. 2d 5.1, and authorities cited therein. That fact is so obvious that it should be unnecessary to detail why and how it is so. The specific power to *regulate parking* and requirement of the *payment of a parking fee* would be useless unless the City also has the practical means to make and enforce regulations necessary to do so.

The prevailing opinion cites no case where a statute or ordinance of the substance of the one under consideration has been declared void. So far as I know, none exists. Reliance is placed upon the declarations of this court concerning the implied powers of cities in various other cases. I expressly agree with Mr. Chief Justice Wolfe's statement, "some of our holdings we have too narrowly construed the granted powers." No better examples of this could be pointed out than those cited in the prevailing opinion. Narrow to the point of being unreasonable (as it seems to me) are the holdings: that to regulate and *suppress* billiard tables did not authorize an ordinance *prohibiting* billiard playing,[13] that *street railways* did not include *motor buses* to empower the city to operate them.[14] The narrowness of the latter holding is pointed up by the fact that in construing a state statute the court held that *street railways* did include *motor buses*.[15]

I submit that these cases, varying as they do from an extremely narrow limitation of the power of the city to a wide latitude of practical application to permit accomplishment of the legitimate purposes implicit in express grants of power, for no such pattern as to make a compelling precedent requiring us to reverse the district court's holding that the ordinance in question is within the fairly implied powers of Ogden City. On the contrary it seems

[13]*American Fork City* v. *Robinson*, 77 Utah 168, 292 P. 249.
[14]*Utah Rapid Transit Co.* v. *Ogden City*, 89 Utah 546, 58 P. 2d 1.
[15]*Utah Light & Traction Co.* v. *State Taf Commission*, 92 Utah 404, 68 P. 2d 759.

to me that the pattern of the law which may be derived from the later and better considered cases is that this court will give a liberal, sensible and practical construction to statutes conferring power upon cities and afford them prerogatives reasonably incident thereto to enable the city to carry out its legitimate functions. An excellent illustration of this is the case cited by the Chief Justice wherein by such practical construction we held that authorization of the city to build a municipal power plant also implied authority to issue bonds payable upon its revenues to defray the cost of the construction thereof.[16] Similarly, we have also held that the power granted a city to pass inspection ordinances carried with it the implied authority to charge a fee to cover the cost of such inspection,[17] and that although the city had no such express authority, there is included in its general powers the implied power to make a valid ordinance prohibiting drunken driving.[18]

Whether a power may be fairly implied from powers expressly granted seems to rest largely upon whether the court believes the legislation beneficial to the welfare of the city and essential in carrying out its legitimate functions. The scope of power seems to vary as the matter in issue appeals to the sense of propriety of the court. It thus appears to me that had the court desired, it very well could have placed what I have termed a liberal, sensible, and practical construction upon the statutory authority granted to Ogden City and held the enactment of the ordinance to be within the powers fairly implied in connection with the regulation of parking on the streets and the charging of a fee therefor.

We must be aware that it is the responsibility of lawmakers in creating, and the courts in interpreting the law,

---

[16]*Utah Power & Light Co.* v. *Provo City,* 94 Utah 203, 74 P. 2d 1191.

[17]*Salt Lake City* v. *Bennion Gas & Oil Co.,* 80 Utah 530, 15 P. 2d 648.

[18]*Salt Lake City* v. *Kusse,* 97 Utah 113, 93 P. 2d 671.

to take cognizance of and keep pace with the march of social progress and adapt the law to social needs insofar as that may be done within the framework of our Constitution and statutory law. With the growing congestion caused by the ever-increasing number of the cars being used on public streets, there must be some sort of system for the sharing of use; otherwise the streets would be monopolized by a few. It is not only the right, but the duty of the city to make the most efficient possible use of its parking areas. This can only be accomplished by limiting the time and manner of parking so that the greatest number of people may enjoy their use for a period of time of optimum benefit to themselves and the business in the locality, and then relinquish to others. This requires that parking of vehicles in such areas must be reasonably limited and effectively regulated.

Therefore, it is absolutely essential that there be some feasible method of establishing responsibility for parking cars in such congested areas and removing the same within the proper time limits. It is an obvious impossibility for the police of a modern city of any size to watch over all cars to see both who parks and who comes to get them. The cost of such policing would be entirely prohibitive. The use of an ordinance such as Ogden has enacted is an effective and perhaps an indispensable aid in getting the maximum use out of parking areas.

In *Commonwealth* v. *Kroger*, 276 Ky. 20, 122 S. W. 2d 1006, the defendant made the contention that a city had no authority to make an identical prima facie evidence rule by ordinance. The Supreme Court of Kentucky held squarely that under its power to regulate traffic the city could provide a rule of evidence necessary for effective enforcement of its ordinance.

The Supreme Court of Michigan in *People* v. *Kayne,* 286 Mich, 571, 282 N. W. 248, held valid a similar prima facie ordinance passed by the city of Detroit, as also did the Missouri Supreme Court in *City of St. Louis* v. *Cook,* 359 Mo. 270, 221 S. W. 2d 468, regarding an ordinance similar

to Ogden's as against the same attack as to its constitutionality. The Ogden ordinance is no different in effect than those held to be constitutional in the authorities above cited. In *People* v. *Bigman*, 38 Cal. App. Supp. 2d 773, 100 P. 2d 370, a state statute was similarly held to be valid.

So far as I am advised, or have been able to learn, wherever such legislation, be it ordinance or statute, has been taken to courts of last resort, it has been declared valid. The courts have uniformly recognized that the powers of cities to manage traffic and the use of streets carries the implied power to effectively regulate parking and parking meters.

The majority opinion ignores these authorities which have held such enactments, both ordinance and statute, to be valid, blandly waiving them aside with the euphonious, but nebulous and meaningless, phrase:

"Ogden * * * looks for support * * * to sister states where fountains of power radically *may* differ from our own" [emphasis added]

but fails to point out any single instance where there is any such difference.

Furthermore, I observe that such ordinance merely declared what is permissible as a matter of law anyway, that is, to infer that the owner parked his automobile or was responsible for doing so. In the case of *Commonwealth* v. *Ober*, 286 Mass. 25, 189 N. E. 601, 602, it was charged that the defendant permitted her car to stand on a public street in violation of a rule of the Traffic Commission of Boston. On the trial, the only evidence that the defendant parked the car was her ownership thereof. The court refused defendant's request to rule as a matter of law:

"that ownership of a motor vehicle is no evidence that the said motor vehicle was parked illegally by the defendant"

and found her guilty. The Supreme Court of Massachusetts affirmed the conviction. It pointed out numerous instances

in the law where criminal liability is imposed without requiring proof of guilty knowledge, see 189 N. E. at page 603 and further observed that the rules of the Boston Traffic Commission were intended to cover any such violation whether by the registered owner personally or by one under permission of the owner. It expressly stated 189 N. E. at page 604:

> "In a word this is one of the unusual instances where a person at his peril must see to it that the rules and regulations are not violated by his act or by the act of another. The reported evidence established a prima facie case which was not met by evidence offered by the defendant. * * * the 'findings of guilty are to stand.'"

It was also so held in *City of Chicago* v. *Crane,* 319 Ill. App. 623, 49 N. E. 2d 802, and in *People* v. *Rubin,* supra.

Upon the basis of these authorities, this ordinance does no more than declare the law as to an existing rule of evidence and it therefore would not be improper to apply it in the plaintiff's trial. How could one dispute that the connection between the registered owner of an automobile and its operation is a natural and reasonable one? In most instances, the car would be parked either by the owner or with his permission. As it is necessary to place responsibility upon someone for the parking of automobiles, the owner of course is the one who should bear it. The actual effect of the ordinance will not be to cause undue inconvenience or hardship to respectable law-abiding citizens but will help to prevent abuses by persons who are habitually trying to side-step or circumvent the law.

The convenience to public authority and to the public generally, of such an ordinance will far outweigh any inconvenience that may be occasioned to registered owners of automobiles who may be under some circumstances required to defend against accusations that they illegally parked their cars when such was not the fact. If this amounts to a burden it is one which law-abiding citizens will willingly bear for the privilege of more fair, efficient, and orderly

use of street parking areas. It appears to me that necessity dictates that such eventually must be the law. And that it falls within the powers necessarily implied in those granted to cities and is an absolute essential to the fair and orderly management of traffic and the use of streets. We may as well recognize and deal forthrightly with the problem instead of passing the responsibility to the legislature where conflicts may arise because the rural representatives are not concerned with this problem, and may therefore be indifferent to it, while the urban areas may feel it of vital concern.

Inasmuch as the majority opinion is limited to the proposition that the ordinance is not within the implied powers of the city, I will not burden this dissent with a discussion of appellant's contention concerning the ordinance unconstitutionality because it deprives him of his presumption of innocence and compels him to give testimony against himself. I observe in passing that on the basis of the adjudicated cases, a number of which are hereinabove cited, it is clearly demonstrable that this contention is untenable.

I believe that a fair analysis of this ordinance, keeping in mind the functions and duties of Ogden City in regard to the regulation of its streets, which entitles it to powers which are fairly implied from those expressly granted to accomplish that purpose, impels the conclusion that the ordinance is valid, as ruled by the district court.

I would affirm the judgment.