437 P.2d 690

**Maxwell E. RICH, Plaintiff,**

v.

**SALT LAKE CITY CORPORATION, a municipal corporation of the State of Utah, Defendant.**

**No. 11117.**

Supreme Court of Utah.

Feb. 20, 1968.

Robert Ryberg, Salt Lake City, for plaintiff.

Homer Holmgren, Salt Lake City, for defendant.

TUCKETT, Justice:

This is an original proceeding instituted by the plaintiff as a taxpayer of Salt Lake City to prevent the City from acquiring and operating a mass transportation system and from entering into a contract with the Salt Lake City Lines, Inc., a corporation, for the purchase of said system.

The Salt Lake City Lines, Inc., has for many years operated the public transportation system in Salt Lake City and in other nearby areas. Salt Lake City Lines has indicated that due to increasing deficits incurred by it that it intends to discontinue its operations and to wind up its business. By resolution of December 6, 1967, the Board of Commissioners of Salt Lake City resolved that the City, being the only entity capable of operating a transportation system, would operate a bus transportation system, and further, that the City would enter into negotiations with the Salt Lake City

Lines, Inc., for the purchase of its facilities and property.

A system of public transportation has existed in Salt Lake City for a long period of time. The original system was that of a street railway on which were operated cars pulled by horses and mules. Thereafter the system evolved into an electric railway system and it now consists of passenger buses propelled by internal combustion engines. The rails on which the older systems operated have long since been dismantled and abandoned.

The plaintiff contends that Salt Lake City is without legal authority under the State Constitution or the statutes of the State to purchase or to operate a transportation system of the kind now in existence.

Salt Lake City being a legislative city as contrasted with a charter city, we must look to the acts of the legislature in determining what powers may be exercised by the City. Section 10–8–14, U.C.A.1953, deals with the subject matter of this action. The pertinent part of that section is as follows:

> They [the cities] may construct, maintain and operate waterworks, gas works, electric light works, telephone lines or street railways, * * * or purchase or lease such works from any person or corporation, * * *.

The language of this section was adopted by the legislature prior to 1907. The court is faced with the problem of determining whether the legislature at the time it adopted the language above referred to intended to grant to the cities the power to operate transportation systems and whether it intended that such systems be confined to operation on rails.

■ A prior decision of the court, namely, Utah Rapid Transit Co. v. Ogden City,[1] concluded that the language of the statute would not permit Ogden City to establish and operate a transportation system employing motor buses. We are not inclined to follow that case and the same is overruled. We are of the opinion that the legislature by granting to the cities the power of operating and acquiring street railways did in fact intend to empower the cities to furnish public transportation of passengers over the city streets by rail or otherwise. In the case of Utah Light & Traction Co. v. State Tax Commission of Utah,[2] the Tax Commission was seeking to collect a sales tax upon fares paid on trolley coaches and motor buses. The legislature by an amendment to the sales tax law provided for an exemption in the following language:

> That said tax shall not apply to intrastate movements of freight and express or to street railway fares.

After the court's decision in the case of Utah Rapid Transit Co. v. Ogden City, the Tax Commission concluded that the court's

1. 89 Utah 546, 58 P.2d 1.

2. 92 Utah 404, 68 P.2d 759.

restrictive construction of the granted powers to cities respecting the maintenance and operation of street railways compelled it to collect a sales tax on all fares except those of streetcars. The court in that case had this to say:

> The trolley coach and motorbus substitutions in place of street cars on rails or as an extension of the rail system are ordinarily considered as being within the scope of street railway service and systems or auxiliary thereto.

The court then concluded that the term "street railway" as used in the statute included trolley coaches and motor buses.

■ We are of the opinion that Salt Lake City under the constitution and the statutes of Utah has the power to acquire and to operate a transportation system as proposed by it, and the plaintiff's petition for a writ of prohibition is denied. No costs awarded.

ELLETT, J., concurs.

CROCKETT, Chief Justice (concurring).

I concur but desire to add these comments.

It is regrettable to have this court importuned, in what is represented as a last minute, almost breathless urgency, to salvage and take over a failing bus line, to overturn decisional law which has stood for over 30 years. This is particularly so in a proceeding between parties who appear to be adversary on the surface only, and where it seems apparent that both sides desire the same result. Furthermore, the legislature will be meeting within a few months (January, 1969) and any proper change in basic law could well be taken care of by the regularly established law-making procedure. For the reasons above stated, I recognize that the position of the dissent is not entirely without merit. Nevertheless, inasmuch as both parties represent to this court that there is urgent necessity in the public interest to have the question answered, for the reasons stated below, I have concluded to concur with the court's opinion.

In accordance with the principle that the law and its interpretation should keep abreast of changing conditions, in view of changes in transportation which have come about so that motor buses are at the present time the only practical means of street transportation, I subscribe to the view that the authorization of the City to own and operate a "street railway" should reasonably be deemed to mean a street transportation system; and that now means buses.

The problem as to the wisdom and the practicality of the City embarking on such an undertaking is solely for the people of the City, through their elected City government; and it is not properly any concern

**342**

of the courts, whose function it is to pass on questions of law.

HENRIOD, Justice (dissenting).

I respectfully disagree, simply because we have nothing before us to decide. The petition asks the court to prevent the City from *negotiating* for a contract to bail out an alleged failing enterprise in order to keep the buses rolling. I know of nothing this court can do to prevent people, cities or anyone else from negotiating as to terms in a contract about which this court knows nothing. It appears that for us to entertain such a prayer anticipatorily would prevent a meeting of the minds of persons who want to have their minds meet, an eventuality that may or may not be reached.

I do not believe this court should decide cases based on hypothetics,—uncrystallized, conjectural and unfirmed on existing paper,—particularly under a petition for an extraordinary writ, traditionally to be employed only sparingly and where there is no other remedy at law. This does not appear to be that case.

People should be allowed to bargain first and litigate later.

CALLISTER, J., concurs in the dissenting opinion of HENRIOD, J.