## UTAH RAPID TRANSIT CO v. OGDEN CITY et al.

No. 5751.   Decided May 29, 1936.   (58 P. [2d] 1).

*DeVine, Howell & Stine,* of Ogden, for plaintiff.

*Geo. S. Barker, Geo. H. Lowe,* and *Ira A. Huggins,* all of Ogden, for defendants.

ELIAS HANSEN, Chief Justice.

Plaintiff by an original proceeding brought in this court seeks a writ of prohibition permanently prohibiting the defendant city and its officers from purchasing and operating motorbusses as a common carrier within the city. Heretofore plaintiff has been operating a street railway within Ogden City and is now engaged in the business of carrying passengers within the city by means of motorbusses. Some issues of fact are raised by plaintiff's petition for a writ and defendants' answer thereto, but the facts so in dispute need not concern us in this proceeding so long as plaintiff has such an interest in the controversy as to entitle it to be heard. Under the facts alleged and admitted, plaintiff has a right to question the authority of the city to operate, as a common carrier, busses within the city. Defendants have demurred to plaintiff's petition for the writ. The demurrer raises the sole question presented for determination, viz., Does the city have authority to own and operate busses within the city for transporting passengers? As the basis for its claimed authority to operate busses, the city relies upon article 11, § 5, subd. (b), of the Constitution of Utah, and R. S. Utah 1933, 15-8-14. The constitutional provision relied upon provides:

"The power to be conferred upon the cities by this section shall include the following. * * *

"(b) To furnish all local public services, to purchase, hire, construct, own, maintain or operate, or lease, public utilities local in extent and use."

The statutory provision relied upon provides:

"They [cities] may construct, maintain and operate waterworks, gas works, electric light works, telephone lines or street railways, or authorize the construction, maintenance and operation of the same by others, or purchase or lease such works from any person or corporation, and they may sell and deliver the surplus product or service of any such works, not required by the city or its inhabitants, to others beyond the limits of the city."

The constitutional provisions here brought in question were adopted at the general election held in 1932 and became effective January 1, 1933.

Prior to the amendment of 1932, section 5 of article 11, provided that:

"Corporations for municipal purposes shall not be created by special laws. The legislature by general laws shall provide for the incorporation, organization and classification of cities and towns in proportion, to population, which laws may be altered, amended or repealed."

The foregoing provision was retained in the amendment of 1932, and still remains a part of our State Constitution. Since the amendment of 1932, cities and towns may, by complying with the procedure therein outlined, adopt charters for their own government. When a charter is so adopted by a city or town, as by the amendment provided, such city or town may look to its charter for its power and authority, but in the absence of an adopted charter, as by the amendment prescribed, the cities and towns of this state must look to legislative enactment for their authority. Such is the doctrine announced by this court in the case of *Wadsworth* v. *Santaquin City*, 83 Utah 321, 28 P. (2d) 161, and such is the clear import of the language of section 5, art. 11, of our State Constitution since the amendment of 1932. Ogden City has not adopted a charter and therefore must rely upon legislative grant to avail itself of "the power to be conferred upon" it by the constitutional provision under review. Such provision is not self-executing. If it were so construed, there would be no purpose

accomplished by a city adopting a charter unless, perhaps, by that means it could limit its powers. The constitutional provision relied upon by defendants is not open to the construction contended for by them. The power "to furnish all local public services," etc., may be vested in the city by an act of the Legislature or by the adoption of a charter and not otherwise.

This brings us to a consideration of whether or not the city may purchase and operate busses for carrying passengers under their authority to construct, maintain, and operate street railways. The contention is made on behalf of defendants that the purposes of the grant of the power to municipalities to operate street railways is to enable them to furnish transportation over their streets and that the means employed to that end are largely within the discretion of the proper officers of the city. On the contrary, plaintiff contends that the law under review does not vest cities with authority to operate motorbusses for carrying passengers. The law is well established generally, and in this jurisdiction

"that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void." 1 Dillon Municipal Corporations (5th Ed.) p. 448, § 237.

The foregoing doctrine has been approved and followed by this court in the following cases: *Salt Lake City* v. *Sutter,* 61 Utah 533, 216 P. 234; *American Fork City* v. *Robinson,* 77 Utah 168, 292 P. 249. Defendants do not claim the au-

thority to operate motor vehicles as an incident to the operation of a street railway. So far as appears, the city does not, and has not operated any street railway. What the city does contend is that the authority conferred upon it to operate a street railway fairly implies authority to operate motorbusses. We are unable to concur in such view. Street railways and motorbusses are both now in common use as a means of carrying passengers, but to say that the former means of transportation fairly includes the latter is to extend the import of the word "railway" far beyond its meaning. It is true as urged by defendants that motorbusses are now, in many instances, used to serve as common carriers, and, as such, perform services which were formerly performed by street railways. At the time the Legislature conferred upon the cities in this state authority to own and operate street railways there were other means of transporting passengers. Horse drawn busses or hacks were in common use when the act under review was passed, yet the lawmaking power did not see fit to permit the cities to own and operate such means of transportation. If the Legislature intended to empower cities of this state to own and operate any and all means of conveyance, it would have been an easy matter to have so provided. Many reasons might be suggested why the Legislature confined the grant of power to the use and operation of street railways, but to do so would be mere speculation. Whatever reasons the lawmaking power may have had in mind is no concern to the courts whose duty it is to give effect to the language used according to its fair import. It is one of the well recognized canons of statutory construction that when a statute directs a thing may be done by a specified means or in a particular manner it may not be done by other means or in a different manner. The familiar *maxim expressio unius est exclusio alterius* is especially applicable in the construction of a statute. *Paso Robles Mercantile Co.* v. *Commissioner of Internal Revenue* (C. C. A.) 33 F. (2d) 653; *Dubuque Dist. Township* v. *Dubuque,* 7 Iowa 262; *Taylor* v.

*Michigan Public Utilities Commission,* 217 Mich. 400, 186 N. W. 485; *Schurtz* v. *City of Grand Rapids,* 208 Mich. 510, 175 N. W. 421; *Keane* v. *Strodtman,* 323 Mo. 161, 18 S. W. (2d) 896; *Fancher* v. *Board of Com'rs of Grant County,* 28 N. M. 179, 210 P. 237; *People* v. *Gorman,* 133 Misc. 161, 231 N. Y. S. 85; *Scott* v. *Ford,* 52 Or. 288, 97 P. 99; *Bryan* v. *Sundberg,* 5 Tex. 418; *Taylor* v. *Taylor,* 66 W. Va. 238, 66 S. E. 690, 19 Ann. Cas. 414; *State* v. *Bridges,* 97 Wash. 553, 166 P. 780. It is said by the Supreme Court of California in the case of *Simoneau* v. *Pacific Electric R. Co.,* 159 Cal. 494, 115 P. 320, 323, that (quoting from the case of *Hannah* v. *Metropolitan St. R. Co.,* 81 Mo. App. 78, 79) :

"'A "Street railway" has been variously defined. As the name indicates, the primary meaning of "street railway," or "street railroad," is one constructed and operated on and along the streets of a city or town for the carriage of persons from one point to another in such city or town or to and from its suburbs.' "

A street railway is such regardless of the motive uower used. *McNab* v. *United Rys. & Electric Co.,* 94 Md. 719, 51 A. 421. It remains such even though constructed under the street. *Barsaloux* v. *Chicago,* 245 Ill. 598, 92 N. E. 525, 19 Ann. Cas. 255. While no particular motive power and no particular location along the street is an essential characteristic of a street railway, yet a way or road without rails is not a railway or railroad. No case has been called to our attention and we have been unable to find a case in which a motorbus line not run on rails has been held to be a street railway. The contrary is held in the case of *Woodward* v. *City of Seattle,* 140 Wash. 83, 248 P. 73, 75. In that case the city of Seattle owned and operated a street railway system. It acquired a motorbus, and while operating a bus line in connection with the street railway system, a passenger was injured on account of the alleged negligence of a bus driver. An action was brought against the city by the injured passenger. It was held that notwithstanding the city had authority to and was operating a street railway it was

without authority to operate motorbusses in connection therewith. In the course of the opinion it is said:

"The power granted by the statute is restricted to railways; and to say that the term 'railways' may be construed to include motor busses and motor bus routes is to say that the term also includes all manner of transportation, including that by water and by air. It is common knowledge that for many years street railway systems have been operated without the operation of motor busses in connection, and this is conclusive that such operation is not indispensable."

If, as the Washington court holds, the authority of the city to own and operate a street railway system does not include authority to operate motorbusses in connection therewith, for stronger reasons motorbusses may not be operated independent of a street railway system ■ under a legislative grant of power to own and operate street railways. Defendants direct our attention to the case of *Spangler* v. *Corless*, 61 Utah 88, 211 P. 692, 693, 28 A. L. R. 72. The law construed in that case provided that:

"One horse, with vehicle and harness, or other equipments, used by a physician, surgeon * * * in making his professional visits," shall be and are exempt from execution.

It was held that an automobile used by a physician for the purpose of making professional visits is exempt from execution regardless of its value. In that case the court reached its conclusion in part because the exemption statute should be liberally construed. As will be seen from the cases and authorities heretofore cited in this opinion, the same degree of liberality is not indulged in construing a statute granting authority to a city. It will further be noted that the statute involved in that action made exempt from execution not only the horse, but also the vehicle used by the physician in making his professional visits. It was held that an automobile is a vehicle, and hence exempt from execution. The principles upon which that case was decided are not applicable to the case in hand. Upon both principle and authority

we are of the opinion, and so hold, that Ogden City is without authority to own and operate busses for carrying passengers.

The writ of prohibition heretofore issued is made permanent. Plaintiff is awarded its costs.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.