2004 UT 30

**PROVO CITY, a municipal corporation, Plaintiff and Appellee,**

v.

**Kay J. IVIE, Devon R. Ivie, Kristine J. Lee, Edward R. Lee, Spring Canyon Limited Partnership, Canyon Acres Limited Partnership, Robert Lee Kenner, and Kirma P. Kenner, Defendants and Appellants.**

No. 20020980.

Supreme Court of Utah.

April 20, 2004.

David C. Dixon, Provo, Harold A. Hintze, Fish Haven, Idaho, for plaintiff.

M. Dayle Jeffs, Provo, for defendants Kay J. Ivie, Devon R. Ivie, Kristine J. Lee, Edward R. Lee, Spring Canyon Limited Partnership Canyon Acres Limited Partnership, Robert Lee Kenner, Kirma P. Kenner, defendants pro se.

DURRANT, Associate Chief Justice:

¶ 1 This appeal addresses the question of whether Provo City possesses the eminent domain power to condemn property located outside its incorporated boundaries. Because Provo City has presented no evidence that it is a chartered city, it is not entitled to exercise the eminent domain powers granted to municipalities under article XI, section 5 of the Utah Constitution. Moreover, Provo City has failed to demonstrate that the legislature has granted it the power to extraterritorially condemn appellants' property under the circumstances in this case. Accordingly, we reverse.

## BACKGROUND

¶ 2 Appellants Kay J. Ivie, Devon R. Ivie, Kristine J. Lee, Edward R. Lee, Robert Lee Kenner, Kirma P. Kenner, and Spring Canyon Limited Partnership (collectively "Spring Canyon") own property consisting of essentially a small unincorporated island of Utah County surrounded by Provo City. On December 19, 2000, the Provo Municipal Council passed a resolution providing for the condemnation of Spring Canyon's property. The council did so in order to allow Provo City to construct a road and bike path through the property that would connect two existing Provo City streets, thereby alleviating traffic congestion in the area and improving east-west traffic movement in the city.

¶ 3 Pursuant to the council's resolution, on June 12, 2002, Provo City filed a complaint seeking to condemn the property, along with a motion for an order of immediate occupancy. On September 5, 2002, Provo City filed an amended complaint, in which it asserted that because Provo City was a municipal corporation "functioning pursuant to the provisions of Utah Code Ann. § 10–1–201, et. seq.," it possessed the eminent domain power under article XI, section 5(b) of the Utah Constitution "to acquire property for public streets both within and without its jurisdiction." In opposition to Provo City's motion for immediate occupancy, Spring Canyon asserted that Provo City had no right to condemn its property because, according to Spring Canyon, the proposed road constituted a "local improvement" under section 5(c) as opposed to a "local public service" or "public utility" under article XI, section 5(b) of the Utah Constitution. Consequently, Spring Canyon argued that, under section 5(c), Provo City could only exercise condemnation powers within its municipal boundaries.

¶ 4 The district court disagreed and granted Provo City's motion for immediate occupancy. The district court reasoned that Provo City "is a municipal corporation and as such has the power to condemn property both within and without its municipal boundaries for the purpose of providing public services and utilities needed by its residents under and pursuant to" article XI, section 5(b) of the Utah Constitution. Based on this conclusion, the district court ruled that because "providing adequate and reasonable transportation facilities to, from and within its boundaries is one of the most basic 'public services' or 'public utilities' which municipalities generally provide," Provo City was "permitted to utilize its[ ] constitutionally endowed power of eminent domain to acquire the property necessary to construct its proposed public street."

¶ 5 On appeal, Spring Canyon argues that the district court erred in ruling that Provo City is empowered under article XI, section 5(b) of the Utah Constitution to extraterritorially condemn property in order to construct a public road. It asserts that the proposed road is more properly characterized as a "local improvement" under section 5(c), and thus Provo City is without authority to condemn Spring Canyon's property. Provo City counters that the district court was correct in determining that the proposed public road in

this case constitutes either a "local public service" or a "public utility" under section 5(b). Provo City further argues that even if the proposed road is not a public utility or service, because section 5(b) grants municipalities the power to extraterritorially condemn property for public utilities, Provo City must, by necessary implication, possess the power to construct roads in which such public utilities (i.e., water and sewer lines) may be placed. Finally, Provo City argues that it is expressly authorized to condemn property outside its corporate limits under the Transportation Corridor Preservation Act. *See* Utah Code Ann. § 72–5–401 to–406 (2001 & Supp.2003).

¶ 6 We have jurisdiction pursuant to section 78–2–2(3)(k) of the Utah Code. Utah Code Ann. § 78–2–2(3)(k) (2002).

## STANDARD OF REVIEW

¶ 7 Because this appeal concerns an interpretation of the Utah Constitution, we review the district court's determination for correctness, giving no deference to its legal conclusions. *Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 17, 73 P.3d 325.

## ANALYSIS

### I. ARTICLE XI, SECTION 5 OF THE UTAH CONSTITUTION

¶ 8 In order to reach the issue of whether the proposed public road in this case constitutes a "public service" or "public utility" under section 5(b), or a "local improvement" under section 5(c), we must first determine whether Provo City may properly exercise any of the powers conferred upon municipalities by article XI, section 5 of the Utah Constitution.

¶ 9 Prior to 1933, article XI, section 5 provided as follows: "Corporations for municipal purposes shall not be created by special laws. The legislature by general laws shall provide for the incorporation, organization and classification of cities and towns in proportion to population...." *Wadsworth v. Santaquin City*, 83 Utah 321, 334, 28 P.2d 161, 166 (1933) (citing Utah Const. art. XI, § 5). In 1933, the constitution was amended

to allow cities to adopt a chartered form of government. *Id.* Section 5 now identifies not only the procedures cities must follow when framing and adopting a charter, but also the attendant powers granted to those cities that operate pursuant to a charter:

> *Each city forming its charter under this section* shall have, and is hereby granted, the authority to exercise all powers relating to municipal affairs, and to adopt and enforce within its limits, local police, sanitary and similar regulations not in conflict with the general law, and no enumeration of powers in this constitution or any law shall be deemed to limit or restrict the general grant of authority hereby conferred....

Utah Const. art. XI, § 5 (emphasis added). In addition to these general powers, section 5 also grants to cities specific enumerated powers:

> The power to be conferred upon the cities by this section shall include the following:
>
> ....
>
> (b) To furnish all local public services, to purchase, hire, construct, own, maintain and operate, or lease, public utilities local in extent and use; to acquire by condemnation, or otherwise, within or without the corporate limits, property necessary for any such purposes, subject to restrictions imposed by general law for the protection of other communities....
>
> (c) To make local public improvements and to acquire by condemnation, or otherwise, property within its corporate limits necessary for such improvements....

Utah Const. art. XI, § 5.

¶ 10 In ruling that Provo City possessed the power to condemn property under section 5(b), the district court apparently interpreted section 5 as granting to all cities the powers enumerated therein. This interpretation is incorrect. As our case law clearly establishes, in order to avail itself of the powers conferred in section 5, including subsections (b) and (c), a city must have first adopted its own charter pursuant to the procedures identified in that section.

¶ 11 We first addressed the differences between chartered and non-chartered municipalities in *Wadsworth*, in which we held that the legislature may, by general law, confer on non-chartered municipalities the same powers granted to chartered municipalities under the then-newly-amended article XI, section 5. 83 Utah at 340, 28 P.2d at 168. Shortly thereafter, we clarified that the powers granted to cities under section 5 are not self-executing, and that "in the absence of an adopted charter, as by the amendment prescribed, the cities and towns of this state must look to legislative enactment for their authority." *Utah Rapid Transit Co. v. Ogden City*, 89 Utah 546, 549, 58 P.2d 1, 2–3 (1936) (overruled on other grounds by *Rich v. Salt Lake City Corp.*, 20 Utah 2d 339, 340, 437 P.2d 690, 691 (1968)) (holding that Ogden City did not have the authority to operate buses within the city pursuant to section 5(b) because Ogden City had not adopted a charter and could therefore only rely on the authority granted to it by the legislature). Since then, we have continued to acknowledge the correctness of this interpretation.[1] *See Spackman v. Bd. of Educ.*, 2000 UT 87, ¶ 9 n. 3, 16 P.3d 533 ("This court has expressly found five current or former constitutional provisions not to be self-executing," including "article XI, section 5, dealing with the source and scope of municipal powers." (citing *Utah Rapid Transit, Co.*, 89 Utah at 549–50, 58 P.2d at 2–3)); *Call v. City of W. Jordan*, 606 P.2d 217, 223 (Utah 1979) (Wilkins, J., dissenting) ("Except for cities which operate under charter and derive their authority from Article XI, Section 5 of the Utah Constitution, the cities of this State are creatures of statute and limited in powers to those delegated by the legislature.... All power and authority of our nonchartered municipalities is derived through legislative grant ...." (internal quotation and citations omitted)); *Nance v. Mayflower Tavern, Inc.*, 106 Utah 517, 520, 150 P.2d 773, 774 (1944) (noting that article XI, section 5 "grants to cities forming charters" the powers enumerated in that section); *Utah Power & Light Co. v. Provo City*, 94 Utah 203, 229, 74 P.2d 1191, 1202 (1937) (Larson, J., concurring) (explaining that because Provo City did not have a charter under article XI, section 5, it was "a creature of the Legislature and as such ha[d] the powers granted to it which the Legislature [grants] to all cities of its class by general law"); *see also State v. Hutchinson*, 624 P.2d 1116, 1122 (Utah 1980) (noting that chartered cities are given more specific and wide-ranging powers than non-chartered cities under article XI, section 5).

¶ 12 Here, Provo City has given no indication that it has adopted a charter entitling it to any of the powers granted under section 5, including the power of extraterritorial eminent domain under section 5(b). Rather, Provo City has represented just the contrary; namely, that it was created and functions pursuant to the laws enacted by the legislature in the Utah Municipal Code. *See* Utah Code Ann. §§ 10–1–101 to 10–18–306 (2003). Consequently, because the record indicates that Provo City is not a chartered city, it may not exercise the powers conferred on chartered cities under section 5 absent a legislative enactment granting such power.[2]

---

1. In *City of Logan v. Utah Power & Light Co.*, 796 P.2d 697, 700 (Utah 1990), and *Thompson v. Salt Lake City Corp.*, 724 P.2d 958, 959 (Utah 1986), we discussed the applicability of section 5 without specifically addressing the question of whether either city was a chartered city.

2. Provo City also argues that even if section 5(b) does not grant to it the express power to condemn property outside its municipal boundaries for purposes of constructing the proposed public road, because Provo City "has indisputable power to condemn extraterritorially for public utilities," it must, by necessary implication, "possess the power to condemn for the road in which to locate, access and maintain those public utilities (water and sewer lines)." We disagree.

Necessarily implied powers are, by definition, those powers necessary and incident to powers expressly granted. *See infra* Part II; *Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 30, 13 P.3d 581; *see also Parker v. Provo City Corp.*, 543 P.2d 769, 770 (Utah 1975). Where, as here, section 5 grants no express powers to Provo City, it cannot provide a basis for our determination that the power of extraterritorial condemnation is necessarily implied. And since, on appeal, section 5(b) is the only basis upon which Provo City argues that extraterritorial condemnation powers are necessarily implied, Provo City's argument fails.

¶ 13 Accordingly, we turn now to Provo City's assertion that the legislature has granted to it the power to extraterritorially condemn Spring Canyon's property under Utah's Transportation Corridor Preservation Act.

## II. TRANSPORTATION CORRIDOR PRESERVATION ACT

¶ 14 A municipality only has such powers that are (1) expressly granted to it by the legislature; (2) necessarily implied and incident to its express powers; and (3) indispensable to accomplish the declared objects and purposes of the municipality. *Parker v. Provo City Corp.*, 543 P.2d 769, 770 (Utah 1975); *see also Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 30, 13 P.3d 581 ("[C]ities have not only those powers expressly granted to them, but also those necessarily implied to carry out such responsibilities." (quotation omitted)). Generally, any specific grant of power to a municipality should be " 'construed with reasonable latitude in light of the broad language of the general welfare cláuse.' " *Dairy Prod.*, 2000 UT 81 at ¶ 30, 13 P.3d 581 (quoting *State v. Hutchinson*, 624 P.2d 1116, 1126 (Utah 1980)). Thus, unless the legislature has specifically limited the powers of cities, "we will not interfere with the means selected to carry out the granted authority 'unless it is arbitrary, or is directly prohibited by, or is inconsistent with the policy of, the state or federal laws or the constitution of this State or of the United States.' " *Id.* at ¶ 31 (quoting *Hutchinson*, 624 P.2d at 1126) (other internal citation omitted).

¶ 15 Provo City contends that the legislature has authorized municipalities to condemn property for public streets outside their corporate limits through its enactment of the Transportation Corridor Preservation Act ("TCPA" or "the Act"). *See* Utah Code Ann. §§ 72–5–401 to –406 (2001 & Supp. 2003). It asserts that the TCPA "clearly envisions the possible 'taking' of property for streets by municipalities both 'within and without' their corporate limits" by " 'acquir[ing]' easements or fee interests in the land which those entities determine are necessary for future transportation facility

needs." We disagree with Provo City's assertion.

¶ 16 The TCPA provides, in relevant part, as follows:

(1) The department, counties, and municipalities may:

. . . .

(c) *acquire fee simple rights* and other rights of less than fee simple, including easement and development rights, or the rights to limit development, *including rights in alternative transportation corridors*, and to make these acquisitions up to 20 years in advance of using those rights in actual transportation facility construction.

(2) In addition to the powers described under Subsection (1), counties and municipalities may:

(a) limit development for transportation corridor preservation by land use regulation and by official maps; and

(b) by ordinance prescribe procedures for approving limited development in transportation corridors until the time transportation facility construction begins.

*Id.* § 72–5–403 (emphasis added). In asserting that this language permits municipalities to exercise extraterritorial condemnation, Provo City points to subsection (2)(a), which allows municipalities to limit development for a transportation corridor by use of "official maps." The Act provides that municipalities may adopt such maps "as an element of the general plan, pursuant to . . . Title 10, Chapter 9, Part 3, General Plan." *Id.* § 72–5–401(4)(c). Consequently, because Utah Code section 10–9–302 provides that municipal planning commissions must make and recommend proposed general plans for areas within the municipality, which may also include "areas outside the boundaries of the municipality if, in the commission's judgment, they are related to the planning of the municipality's territory," *id.* § 10–9–302(1)(b), Provo City argues that the TCPA authorizes it to condemn property outside its own municipal boundaries when needed to establish a public transportation facility.

¶ 17 Even if we were to agree that the Act clearly contemplates municipalities exercising

eminent domain power when establishing alternate transportation corridors,[3] Provo City's argument regarding extraterritorial condemnation is flawed in one fundamental respect: While a municipal planning commission may propose a general plan under Utah Code section 10–9–302(1)(b) that includes areas outside its municipal boundaries, subsection (c) expressly limits such power by providing that "[e]xcept as otherwise provided by law, when the plan of a municipality involves territory outside the boundaries of the municipality, the municipality may not take action affecting that territory without the concurrence of the county or other municipalities affected." *Id.* § 10–9–302(1)(c). Here, neither Provo City nor the record indicates that Utah County consented to the condemnation of Spring Canyon's property. Moreover, Provo City has failed to cite any other legal exception that would authorize such action. Accordingly, we decline to hold that Provo City is empowered to condemn Spring Canyon's property pursuant to the TCPA.

## CONCLUSION

¶ 18 Because Provo City has not established that it has adopted a charter pursuant to the procedures set forth in article XI, section 5 of the Utah Constitution, the district court erred in ruling that Provo City may exercise the powers granted to chartered municipalities under that section. Moreover, Provo City has failed to demonstrate that, in this case, it is entitled to exercise extraterritorial condemnation powers under the Transportation Corridor Preservation Act. Therefore, since Provo City has not presented any other statutory basis upon which it is empowered to condemn property outside its incorporated municipal boundaries, we reverse.

¶ 19 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.

---

3. We express no opinion as to whether the Act, in fact, authorizes extraterritorial condemnation.