2006 UT 33

UTAH COUNTY, Plaintiff and Appellee,

v.

Kay J. IVIE, Devon R. Ivie, Kristine J. Lee, Edward R. Lee, Spring Canyon Limited Partnership; and Canyon Acres Limited Partnership, Defendants and Appellants.

No. 20040846.

Supreme Court of Utah.

May 26, 2006.

Jody K. Burnett, Salt Lake City, Robert J. Moore, Provo, for plaintiff.

M. Dale Jeffs, Provo, for defendant.

DURRANT, Justice:

¶ 1 This is the second case in which Appellants (collectively "Spring Canyon") have appeared before us to challenge local governments' attempts to condemn Spring Canyon property for the construction of a road. The road would connect two Provo City streets over an island of unincorporated Utah County. In the first case, *Provo City v. Ivie,* we held that Provo City did not have the statutory or constitutional power necessary to condemn Spring Canyon's property because the property is located in unincorporated Utah County. 2004 UT 30, ¶ 18, 94 P.3d 206. In this case, Spring Canyon disputes Utah County's action to condemn the same property and the district court's decision to grant Utah County immediate occupancy. During the pendency of the appeal in *Provo City,* Utah County contracted with Provo City ("the Agreement") and agreed to condemn Spring Canyon's property if Provo City would pay the expenses.

¶ 2 In this interlocutory appeal, Spring Canyon makes three main claims: first, that the condemnation action should be dismissed because the Agreement either exceeded the contracting parties' authority or evidenced a bad faith attempt to circumvent our decision in *Provo City;* second, that the district court improperly granted immediate occupancy because Spring Canyon was deprived of due process when Utah County failed to give notice of its factual basis for seeking immediate occupancy and the district court refused to allow discovery of that basis; and third, that the district court improperly granted immediate occupancy because Utah County's proof of necessity was inadequate.

¶ 3 Addressing these issues in turn, we first hold that Utah County and Provo City had authority to enter the Agreement, that this authority was not abrogated by the Interlocal Cooperation Act, and that the Agreement does not demonstrate bad faith. Second, we do not consider Spring Canyon's claim under the state constitution because

Spring Canyon failed to adequately brief it, and we conclude that the federal constitution is satisfied where, as here, there is an adequate mechanism for obtaining compensation. Third, we affirm the district court's order of immediate occupancy because Spring Canyon has not demonstrated that the district court abused its broad discretion in weighing the equities in this case.

## BACKGROUND

¶ 4 In 1970, Utah County and Provo City first planned to, at some point, build a collector street between Provo Canyon Road at 4525 North and University Avenue at 4800 North. In June of 2002, traffic congestion in the area was such that Provo City instituted a condemnation action to acquire the property needed to build the road. Although the proposed road would connect two Provo City streets, it would cross over an island of unincorporated Utah County land owned by Appellants Kay J. Ivie, Devon R. Ivie, Kristine J. Lee, Edward R. Lee, Spring Canyon Limited Partnership, and Canyon Acres Limited Partnership (collectively "Spring Canyon"). The district court in that case originally granted an order of immediate occupancy, but, following an interlocutory appeal, we reversed the order and held that Provo City did not have the power to condemn land outside its corporate boundaries because (1) Provo is not a charter city and could therefore not avail itself of the extraterritorial condemnation power granted in article XI, section 5(b) of the Utah Constitution, and (2) no other then-existing statute granted them the power to do so.[1] *Provo City v. Ivie,* 2004 UT 30, ¶ 18, 94 P.3d 206.

¶ 5 In May of 2003, during the pendency of its appeal, Provo City entered into an agreement with Utah County purportedly under the Interlocal Cooperation Act, Utah Code Ann. §§ 11–13–101 to –314 (2003 & Supp. 2005) (the "ICA"). The Agreement provided that Utah County would condemn the neces-

---

1. In response to our decision in *Provo City v. Ivie,* 2004 UT 30, 94 P.3d 206, the Legislature amended Utah Code section 10–8–2 to allow noncharter cities to exercise the power of eminent domain both inside and outside their city boundaries. *See* Utah Code Ann. § 10–8–2(1)(b) to (d) (Supp.

2005). Although Utah County's brief notes this amendment, neither party argues that this amendment has retroactive effect such that it would affect this appeal. Our analysis therefore assumes that Provo City lacked authority to condemn the property at the time of the Agreement.

sary property, and Provo City would pay all expenses required to do so. In May of 2004, following the Court's decision in *Provo City v. Ivie,* Utah County filed the condemnation complaint and motion for order of immediate occupancy that are at issue in this case. Spring Canyon subsequently filed a motion to dismiss based on the theory that Utah County was unlawfully "lend[ing] its condemning powers to Provo City." Prior to the September 1, 2004 hearing, Spring Canyon also filed a motion to allow discovery and an objection to the district court's consolidating the hearings for the motion to dismiss and the motion for order of immediate occupancy. On September 14, 2004, the district court denied Spring Canyon's motion to dismiss and issued an order of immediate occupancy in favor of Utah County. Spring Canyon then requested and was granted leave to file this interlocutory appeal to challenge both the denial of its motion to dismiss and the order of immediate occupancy.

## STANDARD OF REVIEW

¶ 6 Whether Utah County's condemnation action should be dismissed based on the Agreement is an issue of law, so we review the district court's decision for correctness. *See Bearden v. Croft,* 2001 UT 76, ¶ 5, 31 P.3d 537. The issue of whether Spring Canyon received due process is also an issue of law, so we grant no deference to the district court's decision. *Vigil v. Div. of Child & Family Servs.,* 2005 UT App 43, ¶ 7, 107 P.3d 716.

¶ 7 Although both parties to this appeal state that we should review the third issue—whether there was sufficient proof to support the order of immediate occupancy— under a clearly erroneous standard, our prior cases have recognized that weighing the equities of an order of immediate occupancy is largely a discretionary function. *Utah State Rd. Comm'n v. Friberg,* 687 P.2d 821, 833 (Utah 1984). And we have noted that "[t]he granting of a motion for immediate occupan-

cy has been held by this court primarily to be [within] the sound discretion of the trial court, reversible only because of obvious abuse thereof." *State v. Denver & Rio Grande W. R.R.,* 8 Utah 2d 236, 332 P.2d 926, 927 (1958). Thus, we apply the abuse of discretion standard to the third issue in this case. We discuss each of these issues in turn.

## ANALYSIS

### I. UTAH COUNTY'S AGREEMENT WITH PROVO CITY DOES NOT LIMIT ITS POWER TO CONDEMN SPRING CANYON'S PROPERTY

¶ 8 Spring Canyon's appeal of the district court's denial of its motion to dismiss depends entirely on the effect, if any, that the Agreement between Utah County and Provo City has on Utah County's condemnation power.[2] We will first discuss the validity of the Agreement and whether it limits Utah County's condemnation power. We will then discuss whether Utah County satisfied the requirements for exercising its condemnation power under Utah Code section 78–34–4, and specifically whether the existence of the Agreement mandates a finding of bad faith that undermines Utah County's condemnation authority.

### A. *Utah County and Provo City Were Authorized to Enter into the Agreement Pursuant to Their General Contracting Power*

¶ 9 Spring Canyon argues that because Provo City lacks the power to condemn the subject property, both the Agreement and the exercise by Utah County of its eminent domain power pursuant to the Agreement were unlawful and invalid under the ICA. Spring Canyon's primary argument is that the ICA requires that all parties to an agreement have the power to do everything contemplated by the agreement. We conclude that local governments have authority to en-

---

2. Utah County asserts that, under Utah Code section 11–13–219(5), the thirty-day statute of limitations for challenging the validity of an interlocal agreement has expired and that Spring Canyon is therefore barred from collaterally at-

tacking the agreement in this action. Because we hold that the Agreement does not affect Utah County's condemnation power, we do not address this argument.

ter into agreements pursuant to their general contracting powers so long as each entity does not exceed its individual power, and, although the ICA provides for contracting only where all parties to an interlocal agreement have the power to do all acts under the agreement, the ICA does not abrogate local governments' general contracting power.

¶ 10 We first examine the limits of local governments' general contracting power. Before the Legislature passed the ICA in 1965, local governments had the power to contract with one another under general powers granted by the state constitution and various statutes. *See Bair v. Layton City Corp.*, 6 Utah 2d 138, 307 P.2d 895, 902 & 902 n. 8 (1957) (citing various constitutional and statutory provisions that conferred authority for Layton City to contract with North Davis County Sewer District); Utah Code Ann. § 10–1–202 (2003) ("Municipalities may … enter into contracts …."); *id.* § 17–50–302(1)(b) (2005) ("A county may … provide services, exercise powers, and perform functions that are reasonably related to the safety, health, morals, and welfare of their inhabitants, except as limited or prohibited by statute."). The limit on these general contracting powers was presumably that no governmental party to a contract could exceed its individual powers in fulfilling its obligation under the contract. Thus, two governmental entities of unequal power could contract in their areas of inequality so long as neither exceeded its own powers in performing the contract.

■ ¶ 11 The Agreement in this case does not require any performance by either Utah County or Provo City that is beyond the individual authority of that entity. The terms of the Agreement material to this appeal require Utah County to condemn the property for the road and Provo City to pay the expenses of condemnation, installation, and maintenance of the road. Utah County has authority to condemn property under Utah Code section 17–50–302(2)(a)(ii). Provo City has authority "to appropriate money for any purpose that, in the judgment of the municipal legislative body, provides for the safety, health, prosperity, moral well-being, peace, order, comfort, or convenience of the inhabitants of the municipality." *Id.* § 10–8–2(3) (Supp.2005). Paying for the construction and for the maintenance of a public road certainly falls within Provo City's authority under this provision. Thus, absent the ICA, the Agreement is a valid exercise of both Utah County's and Provo City's general contracting powers. We are called upon to determine, however, whether the ICA operates to limit these general contracting powers.

¶ 12 Spring Canyon argues that because the ICA, specifically Utah Code section 11–13–212(1)(a), allows for interlocal agreements only where each party has the power to do all acts contemplated in the agreement, it must also preclude all other agreements between local governmental entities. Utah County counters that Spring Canyon's proposed interpretation would lead to logically inconsistent results because a local government could condemn property for a street if a private party paid the expenses, *see* 7 Patrick J. Rohan & Melvin A. Reskin, *Nichols on Eminent Domain*, § 5.02[3] (3d ed.2006), but could not do the same where another local government pays the expenses. We conclude that although the ICA does not provide a source of power for cooperative action between local governments of unequal power in their area of inequality, it also does not preclude local governments from contracting with each other in these areas under their general contracting power.

¶ 13 It is true that Utah Code section 11–13–212 only allows agencies to contract with one another "to perform any service, activity, or undertaking which each public agency … is authorized by law to perform." Utah Code Ann. § 11–13–212(1)(a) (2003). We further stated in *CP National Corp. v. Public Service Commission* that "the intent of the [ICA] appears to be to allow the municipalities collectively to exercise powers which they already possess individually." 638 P.2d 519, 521 (Utah 1981). But while these sources support Spring Canyon's argument that the ICA only authorizes contracting among local governments of equal power, they do not support the argument that the ICA precludes all other contracts between local governments. Spring Canyon offers no

evidence that the Legislature intended the ICA to have that effect.

■ ¶ 14 Indeed, the ICA's stated purpose is "to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage" and also "to provide the benefit of economy of scale." Utah Code Ann. § 11–13–102 (2003). This purpose statement demonstrates that the Legislature intended the ICA to expand rather than limit local governments' ability to cooperate. Additionally, we can find no provision of the ICA that removes existing powers from local governments. Where the Legislature has not clearly limited the general contracting powers of local governments, we construe those powers broadly. *State v. Hutchinson*, 624 P.2d 1116, 1126–27 (Utah 1980). Thus, the ICA does not abrogate local governments' power to contract among themselves under their general contracting power.

¶ 15 In sum, although the ICA did not empower Utah County and Provo City to enter into the Agreement, the Agreement is nevertheless valid under their general contracting powers. *See* Utah Code Ann. § 10–1–202; *id.* § 17–50–302(1)(b). Having determined that the ICA does not invalidate the Agreement, we now discuss whether the agreement evidences bad faith such that we must dismiss Utah County's condemnation action.

### B. Utah County Satisfied the Elements of Section 78–34–4

¶ 16 Spring Canyon argues that even if the condemnation is not precluded by the ICA, the Agreement shows bad faith, and we should therefore dismiss the condemnation action on that basis. In addition to the requirement that the entity have the authority to condemn property, Utah Code section 78–34–4 requires that "the use to which [the property] is to be applied is a use authorized by law ... [and] the taking is necessary to such use." Utah Code Ann. § 78–34–4(1), (2) (2002); *see also Utah State Rd. Comm'n v. Friberg*, 687 P.2d 821, 832 (Utah 1984). Utah County has authority to condemn property under Utah Code section 17–50–

302(2)(a)(ii). Further, a public street is clearly "a use authorized by law," as specifically set forth in Utah Code section 78–34–1(3). Therefore, only the question of necessity remains at issue. Spring Canyon contends that the taking is not necessary because Utah County is exercising its power of eminent domain in bad faith.

■ ¶ 17 In *Bountiful v. Swift*, we noted that the "necessity ... in opening a public street is a political question and in absence of fraud, bad faith, or abuse of discretion[,] action of [local governments] will not be disturbed by the courts." 535 P.2d 1236, 1238 (Utah 1975). From this statement, Spring Canyon argues that bad faith precludes a finding that a taking is necessary. We are not convinced that *Swift* establishes that premise. Rather, *Swift* merely stands for the proposition that, on evidence of bad faith, a court need not defer to the legislative body on the question of necessity. *Id.* But even were we to accept Spring Canyon's interpretation, the district court specifically found that Utah County did not condemn the property in bad faith, and it is entitled to deference on that finding. Indeed, we can only reverse the district court's finding that Utah County did not act in bad faith if it is clearly erroneous. *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶ 21, 20 P.3d 868 ("[I]t is within the discretion of the trial court to determine whether an action is asserted in bad faith, and we therefore review such a determination under the clearly erroneous standard.").

■ ¶ 18 In this case, there is both scant evidence of bad faith and ample evidence of good faith. Spring Canyon argues that Utah County's motive in bringing this action was only to help Provo City circumvent our decision in *Provo City v. Ivie*. While circumventing that decision was clearly an objective of the *Agreement*, it was not the only objective of the *condemnation action*. Utah County has a substantial interest in minimizing traffic congestion within its boundaries. Citizens of Utah County, as well as Provo City, will benefit from the road. The fact that Utah County waited until Provo City discovered it could not condemn the property, and the fact that Provo City will be paying the expenses

are more indicative of prudent fiscal management than bad faith. It would be folly for the county to have its taxpayers pay to condemn and construct this road where Provo City is ready and willing to cover that expense. As there is evidence that Utah County had legitimate reasons for condemning the property at issue, we affirm the district court's finding that there was no bad faith. Accordingly, Utah County's legislative finding that this condemnation is necessary "will not be disturbed." *Swift*, 535 P.2d at 1238.

¶ 19 Because the ICA did not prohibit Utah County and Provo City from entering into the Agreement, and because Utah County satisfied the statutory requirements to condemn the property, we hold that the district court correctly denied Spring Canyon's motion to dismiss.

## II. SPRING CANYON'S DUE PROCESS RIGHTS WERE NOT INFRINGED

¶ 20 Spring Canyon argues due process violations under both the state and federal constitutions. Spring Canyon argues first that it did not receive adequate notice of the immediate occupancy hearing because Utah County's motion did not specify any factual basis for requiring immediate occupancy, and second, that it was denied any opportunity to conduct discovery to find the factual basis. Utah County counters that there was no violation of due process because the order of immediate occupancy is merely interlocutory and additional process will be had prior to the final judgment on the merits. We decline to address Spring Canyon's state constitutional due process claims because they are inadequately briefed, and we conclude that the federal Due Process Clause does not require the notice or discovery Spring Canyon seeks.

¶ 21 Both the state and federal constitutions prohibit the state from depriving any person of "life, liberty, or property" without "due process of law." U.S. Const. amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."); Utah Const. art. I, § 7 ("No person shall be deprived of life, liberty or property, without due process of law."). We have held that, in some circumstances,

article I, section 7 of the Utah Constitution requires a different level of process than the federal Due Process Clause. *See, e.g., Foote v. Utah Bd. of Pardons*, 808 P.2d 734, 735 (Utah 1991) (affording more protection under the Utah Due Process Clause than its federal counterpart in proceedings before the board of pardons); *State v. Guzman*, 2006 UT 12, ¶ 16, 133 P.3d 363 (noting that the due process analysis of eyewitness testimony under the Utah Constitution is different than the federal analysis). Although Spring Canyon claims a violation of both the state and federal constitutions, we decline to address its state constitutional claim because Spring Canyon has not briefed that claim "as an issue separate and distinct from its federal counterpart." *State v. Rynhart*, 2005 UT 84, ¶ 12, 125 P.3d 938; *see also Midvale City Corp. v. Haltom*, 2003 UT 26, ¶ 75, 73 P.3d 334 ("Without analysis, the court can make no informed decision regarding whether the state constitutional provision in question was intended to mirror its federal counterpart, or whether it was intended to expand the scope of *First Amendment* guarantees."). Our due process analysis is therefore based solely on the federal constitution.

¶ 22 The hallmarks of due process are notice and an opportunity to be heard, but not all proceedings demand the same level of process. *Mathews v. Eldridge*, 424 U.S. 319, 334, 348–49, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The level of process required generally depends on the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893. In eminent domain proceedings, however, courts have been reluctant to read in any protections from the federal Due Process Clause beyond those

already provided by the Just Compensation Clause of the Fifth Amendment. *Miller v. Campbell County,* 945 F.2d 348, 352 (10th Cir.1991). This reluctance is predicated, at least in part, on a concern over "impos[ing] new and potentially inconsistent obligations upon the parties under the substantive or procedural components of the Due Process Clause." *Id.; see also Bateman v. City of W. Bountiful,* 89 F.3d 704, 709 (10th Cir.1996). In this vein, the United States Supreme Court has stated in dicta that "[u]nlike the Due Process Clause ... the Just Compensation Clause has never been held to require pretaking process or compensation," *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 195 n. 14, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and many federal circuit courts have held "that a sovereign vested with the power of eminent domain may exercise that power consistent with the [C]onstitution without providing prior notice, hearing, or compensation, so long as there exists an adequate mechanism for obtaining compensation," *Collier v. Springdale,* 733 F.2d 1311, 1314 (8th Cir.1984); *accord Rex Realty Co. v. City of Cedar Rapids,* 322 F.3d 526, 529 (8th Cir.2003); *Miller,* 945 F.2d at 352; *Stringer v. United States,* 471 F.2d 381, 383 (5th Cir.1973). Thus, we conclude that because Utah County has authority to condemn the property and there is a mechanism in place for Spring Canyon to obtain compensation, Spring Canyon has no claim under the federal Due Process Clause.

## III. THE DISTRICT COURT WAS WITHIN ITS DISCRETION IN ORDERING IMMEDIATE OCCUPANCY

¶ 23 Having determined that Spring Canyon's due process rights were not infringed, we must now decide whether the district court abused its discretion in granting immediate occupancy to Utah County based on the proof of necessity before it. Utah Code section 78–34–9 provides that a district court shall "take proof by affidavit or otherwise of: (i) the value of the premises sought to be condemned; (ii) the damages that will accrue from the condemnation; and (iii) the reasons for requiring a speedy occupation." Utah Code Ann. § 78–34–9(2)(a) (Supp.2005). After receiving that proof, the

court may "grant or refuse the motion according to the equity of the case and the relative damages that may accrue to the parties." *Id.* § 78–34–9(2)(b). As stated above, *supra* ¶ 7, the district court is given broad discretion to determine whether the equities weigh in favor of or against a condemner's motion for order of immediate occupancy. *See Utah State Rd. Comm'n v. Friberg,* 687 P.2d 821, 833 (Utah 1984); *Bountiful v. Swift,* 535 P.2d 1236, 1238 (Utah 1975). And when a local government uses its power of eminent domain for a public road, we have held that the "*expediency* of appropriating any particular property is not a subject of judicial cognizance." *Utah Dep't of Transp. v. G. Kay, Inc.,* 2003 UT 40, ¶ 11, 78 P.3d 612 (internal quotaton marks omitted) (emphasis added); *see also Swift,* 535 P.2d at 1238 ("The expediency ... in opening a public street is a political question and in the absence of fraud, bad faith, or abuse of discretion ... will not be disturbed by the courts."). We must first determine the burden of production contemplated by section 78–34–9, and then determine whether the district court abused its discretion in finding that Utah County met that burden in this case.

¶ 24 Spring Canyon argues that this Court's precedent requires a condemner to show "considerable" or "ample" evidence of the reasons for requiring a speedy occupation. In support of its position, Spring Canyon cites *Swift,* 535 P.2d at 1238, and *Utah Department of Transportation v. Fuller,* 603 P.2d 814, 817 (Utah 1979). Spring Canyon reads these cases too broadly. Instead of setting the threshold burden that the condemner must meet to merit immediate occupancy, these cases merely hold that the "considerable" supporting evidence in *Swift,* 535 P.2d at 1238, and the "ample" supporting evidence in *Fuller,* 603 P.2d at 817, were enough to satisfy the applicable burden.

¶ 25 In contrast, Utah County argues that this Court's precedent requires a condemner to show merely "some evidence" that the prima facie elements exist, and cites *Friberg,* 687 P.2d at 833, and *Cornish Town v. Koller,* 817 P.2d 305, 308 (Utah 1991), for its position. But Utah County also reads these

cases too broadly. Both *Friberg* and *Cornish Town* require a "prima facie showing of the right to condemn," but neither case addresses what showing need be made with respect to the elements of section 78–34–9. *Friberg,* 687 P.2d at 833; *accord Cornish Town,* 817 P.2d at 308.

¶ 26 We conclude that the condemner need only present prima facie evidence of the elements of subsection 78–34–9(2)(a)(i) to (iii). This relatively light burden of production stems from appropriate deference to legislative action. *See G. Kay, Inc.,* 2003 UT 40, ¶ 11, 78 P.3d 612 (noting the wide discretion usually given government in exercise of its eminent domain power). It is because of this deference that the practice of granting orders of immediate occupancy "has been considered routine." *State v. Denver & Rio Grande W. R.R.,* 8 Utah 2d 236, 332 P.2d 926, 927 (1958).[3] In essence, where there is no "fraud, bad faith, or abuse of discretion," *Swift,* 535 P.2d at 1238, and the condemner has presented prima facie evidence both of its authority to condemn and of the elements found in subsections 78–34–9(2)(a)(i) to (iii), the condemner's decision to seek immediate occupancy should be respected by the courts.

¶ 27 In light of this deferential standard, local governments are, in large part, left to assess the wisdom of seeking immediate occupancy. Taking immediate occupancy entails some risk because "an order of immediate occupancy is interlocutory and is subject to change should the trial court become convinced of the need to do so." *Cornish Town,* 817 P.2d at 309. Often, as in this case, the government seeks immediate occupancy in order to immediately commence construction. If the district court later determines that condemnation was not appropriate, then there will likely already be substantial damage to the property that a condemner would be required to repair. Spring Canyon argues that this type of damage would be irreparable. Where possession of the property could be returned to the owner, and where the property could be restored, albeit at great expense, to its pre-immediate-occupancy-order state, the damage inflicted is not properly characterized as irreparable. Ultimately, the courts' liberality in granting orders of immediate occupancy merely recognizes that, by filing a motion for immediate occupancy, the condemner assumes the risk that the court may ultimately find against it and require it to incur substantial expense in restoring the property. Although that risk is almost always small, it still serves to deter governmental entities from needlessly seeking immediate occupancy.

¶ 28 Applying this deferential burden to this case, we conclude that Utah County satisfied its burden of production, and thus, that the district court did not abuse its discretion by ordering immediate occupancy. Utah County presented evidence that the road would relieve traffic congestion, and the district court specifically stated in its findings that "roads are much easier and less costly to construct during the non-winter seasons." Although the evidence is hardly overwhelming, we cannot conclude that the district court abused its discretion by deciding that the equities weigh in favor of Utah County.

## CONCLUSION

¶ 29 We affirm the district court on all three issues before us. First, the Agreement between Provo City and Utah County does not give cause to disturb Utah County's exercise of its eminent domain power because the Agreement is valid under the entities' general contracting authority and does not evidence bad faith. Thus, the district court's denial of Spring Canyon's motion to dismiss

---

**3.** Significantly, we have only reversed one order of immediate occupancy for a reason other than lack of authority to condemn. *See Utah Dep't of Transp. v. Hatch,* 613 P.2d 764, 765 (Utah 1980). In *Hatch,* we considered UDOT's condemnation of billboards as part of a highway beautification program. The district court entered an order of immediate occupancy but did not enter any findings in support of its order. Upon review of the record, we concluded "as a matter of law" that the facts could not support immediate occupancy. *Id.* Our opinion in *Hatch* does not make clear what facts in that case precluded, as a matter of law, an order of immediate occupancy. It bears noting, however, that *Hatch* did not deal, as this case does, with a local government's using its condemnation power for the ordinary purpose of constructing a road. *See Bountiful v. Swift,* 535 P.2d 1236, 1238 (Utah 1975).

was appropriate. Second, we conclude that, where a local government has authority to condemn, the federal constitution requires only that a property owner have an adequate mechanism for obtaining compensation. There is such a mechanism here. We decline to address Spring Canyon's state constitutional claim because it was inadequately briefed. Third, we affirm the district court's order of immediate occupancy because Utah County presented prima facie evidence of the elements of section 78–34–9(2) and Spring Canyon has not shown that the district court abused its broad discretion in weighing the equities under that section. We affirm and remand for further proceedings in accordance with this opinion.

¶ 30 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.