*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 80**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SALT LAKE CITY CORPORATION,
*Appellee,*

*v.*

EVANS DEVELOPMENT GROUP, LLC,
*Appellant.*

No. 20130741
Filed March 24, 2016

Third District, Salt Lake
The Honorable Robert P. Faust
No. 20130741

Attorneys:

Kevin Egan Anderson, J. Elizabeth Haws,
Salt Lake City, for appellee

Robert E. Mansfield, Steven J. Joffee,
Salt Lake City, for appellant

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
and JUSTICE HIMONAS joined.

JUSTICE PEARCE became a member of the Court on
December 17, 2015, after oral argument in this matter,
and accordingly did not participate.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1    Salt Lake City Corp. (City) used its eminent domain power
to condemn land owned by Evans Development Group, LLC
(Evans). Rather than using the Evans property for itself, however,
the City condemned the property in order to exchange it for another
piece of property owned by Rocky Mountain Power. Evans appealed
the district court's decision authorizing the City to exercise its
eminent domain power for exchange purposes. We conclude that the

City did not follow the condemnation procedures required by statute, and thus reverse the district court's decision.

## BACKGROUND

¶2      In 2007, Salt Lake City began working on a $50 million railroad realignment project called the Westside Railroad Realignment Project. The purpose of this project was to permanently remove railroad lines running along 900 South and Folsom Street, in order to decrease noise, pollution, and interference with residential neighborhoods, as well as to improve traffic circulation.

¶3      To complete this project, the City needed to acquire certain parcels of land, including a 2.39-acre parcel owned by Rocky Mountain Power. But Rocky Mountain Power did not wish to sell its property as it needed the land to build a substation and provide the future electricity necessary for the northern quadrant of downtown Salt Lake City. The City initially contemplated condemning the property, but decided against it because it needed the property immediately and the City had concerns about whether it could condemn a property already being held for public use. *See* UTAH CODE § 78B-6-504(1)(d) (requiring condemnation to be for a "more necessary public use" if the land is already held for public use).

¶4      The City and Rocky Mountain Power eventually agreed that Rocky Mountain Power would transfer its property to the City if the City would "make an alternative location immediately available that was equally useful for the construction and operation of a substation." The City and PacifiCorp (Rocky Mountain Power's parent company) entered into a "Property Exchange Agreement" on March 14, 2007, which provided that Rocky Mountain Power would transfer its property to the City in exchange for a parcel of land that would be "acceptable for the construction and operation of a substation" and would meet several criteria, including size and location specifications. At the time of the agreement, the City had outlined nine potential properties.

¶5      To fulfill its obligation under the Exchange Agreement, the City decided to condemn Evans' 2.67-acre parcel of land, located at approximately 436 West 400 North in Salt Lake City. The City began the condemnation proceedings on October 3, 2007. The complaint asserted several public uses and public purposes for the condemnation, including "acquiring property for an electrical power plant/generation/transmission site" and "facilitating and enabling the removal and realignment of freight railroad tracks."

¶6      Evans moved for summary judgment on November 28, 2007, alleging that the City lacked statutory authority to condemn its

property. Evans argued that the condemnation was not for a public use as required by Utah Code section 78B-6-501, but merely for use as an exchange property, a use not enumerated in the statute. The City filed a cross-motion for partial summary judgment as to the issue of public use.

¶7      The district court granted the City's motion, finding that after "reviewing the relevant statutory and case law, it is clear the proposed use for the [Evans] property is public, not private." Evans filed a motion to reconsider, and after reconsideration, the district court again concluded that the City condemned the Evans property for public, not private, use. The court reasoned that it was "undisputed the uses the City seeks to condemn the subject property for: to facilitate the West Side Railroad Relocation project, and for an electrical power site to ensure adequate electrical power facilities for a quadrant of the City." The court further found that the "condemnation and exchange process [was] merely the *method* by which the properties were acquired for the ultimate condemnation purpose of public uses. The ultimate use of the property is the controlling factor as to the purpose of the condemnation."

¶8      Evans appeals the district court's ruling, asking us to determine whether a "municipality has statutory authority to condemn private property when the purpose of the taking is to exchange or trade the private property to a third party for another parcel of real property."[1] We have jurisdiction to review the district court's decision under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶9      "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863 (citation omitted). We also "'review a district court's decision to grant summary judgment for correctness,' giving no deference to the court below." *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 19, 201 P.3d 966 (citation omitted).

---

[1] Evans also appealed the issue of whether the construction had been commenced in a "reasonable time," as required by Utah Code section 78B-6-520. We do not reach this issue as we hold the condemnation itself to be in violation of the statute.

**ANALYSIS**

I. THIS TYPE OF PROPERTY EXCHANGE DOES NOT
SATISFY UTAH'S EMINENT DOMAIN STATUTES'
PUBLIC USE REQUIREMENT

¶10 When a government entity condemns property, our eminent domain statutes require that the entity not only "have the authority to condemn property," *Utah Cty. v. Ivie*, 2006 UT 33, ¶ 16, 137 P.3d 797, but also that "the use to which [the property] is to be applied is a use authorized by law . . . [and] the taking is necessary for the use." UTAH CODE § 78B-6-504(1).

¶11 Utah Code section 78B-6-501 lists the uses for which eminent domain may be exercised. First, the statute requires that eminent domain be exercised for a *public* use. The statute then continues with a nonexclusive list of public uses. *See Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 20, 332 P.3d 900 ("[T]hese enumerated public uses are not exclusive. They merely establish a general starting point."). Section 501(4) includes "railroads and street railways for public transportation." And section 501(8) includes "electric light and electric power lines, [and] sites for electric light and power plants." The statute also contains a catchall for "all other public uses for the benefit of any county, city, or town, or its inhabitants." UTAH CODE § 78B-6-501(3)(f).

¶12 The City argues that these sections "provide express statutory authority" for its Exchange Agreement. In order to complete the Westside Railroad Realignment Project, the City had to take Rocky Mountain Power's property, and in order to take Rocky Mountain Power's property, the City condemned the Evans property to provide Rocky Mountain Power with an adequate substitute property. Both railroads and power plants—the City points out—are expressly authorized public uses in the statute.

¶13 We disagree with the City's reading of the statute and conclude that it does not contemplate this type of property use. It is not enough to accomplish a public use on *some* property; the condemnor must satisfy the public use requirement on the property subject to the condemnation. *See id.* § 78B-6-504(1) ("Before property can be taken it must appear that . . . *the use to which it is to be applied* is a use authorized by law." (emphasis added)). Therefore, while section 501(4) might provide authority for the City to condemn Rocky Mountain Power's property, it does not authorize the City to condemn the Evans property.

¶14 Likewise, section 501(8) does not provide authorization for the City to condemn, because even though the ultimate proposed use

of the property is to provide electricity, it would be a third party—Rocky Mountain Power—that would own the property and be in charge of the public use. Even if the City's planned use of the property for an exchange purpose could arguably be considered some "other public use[]," *see id.* § 78B-6-501(3)(f), there are three provisions in which the legislature makes clear that the eminent domain statutes require that it is the *condemnor* that must maintain ownership of the property and be in charge of the public use—not a third party. We discuss each in turn.

*A. The Party "in Charge of the Public Use for Which the Property Is Sought" Must Be Listed as the Condemnor in the Condemnation Proceeding*

¶15 Utah Code section 78B-6-507(1)(a) requires the condemnation complaint to contain the name of the entity "in charge of the public use for which the property is sought." This entity, which is the condemnor, "must be styled plaintiff." *Id.* In this case, the City condemned the Evans property in order to give it to Rocky Mountain Power. The only valid public use to which this property would be put is a substation, but Rocky Mountain Power, the entity that would build and operate it, is not a party to the condemnation action.

¶16 The City relies on *Utah County* to assert that "a public use can be accomplished by a third party pursuant to an Exchange Agreement." In *Utah County*, Provo City wanted to construct a road that would "connect two Provo City streets over an island of unincorporated Utah County" land. 2006 UT 33, ¶ 1. Provo City lacked constitutional or statutory authority to condemn property located in unincorporated Utah County, so it entered into a contract with Utah County in which Utah County would condemn the property if Provo City paid the expenses of constructing and maintaining the road. *Id.* The condemnee opposed the condemnation on the ground that "Utah County was unlawfully 'lend[ing] its condemning powers to Provo City.'" *Id.* ¶ 5 (alteration in original).

¶17 We held that "two governmental entities of unequal power could contract in their areas of inequality so long as neither exceeded its own powers in performing the contract." *Id.* ¶ 10. Because Utah County had authority to condemn the property, and Provo City had authority to pay for the construction and maintenance of a public road, we held that "the Agreement is a valid exercise of both Utah County's and Provo City's general contracting powers." *Id.* ¶ 11.

¶18    Unlike the agreement in *Utah County*, the Exchange Agreement entered into in this case did not contemplate a valid exercise of condemnation power. The City exceeded its powers by condemning the Evans property not for its own use but solely for the ownership and use of Rocky Mountain Power. In *Utah County*, although Provo City paid the costs for the construction and maintenance of the road, Utah County maintained ownership, and was ultimately in charge of and responsible for the condemned property. Nothing in our statutes precludes this type of indemnification arrangement.

*B. The Condemnor Must Commence and Complete Construction and Use of the Property*

¶19    Utah Code section 78B-6-520 requires the *condemnor* to commence and complete construction and use within a reasonable time. The statute contemplates that it is the condemnor that will oversee the construction on the property. The statute does not require the condemnor to physically commence construction itself. The condemnor could enter into a contract with a construction company or other third party to complete the construction, but, importantly, the condemnor must remain "in charge of" the property and must ultimately be responsible for construction of the public use. *See supra* ¶¶ 16–18. In this case it is not the City that would construct a substation on the Evans property, but rather Rocky Mountain Power. By the time Rocky Mountain Power could commence construction of its substation, the City—pursuant to its Exchange Agreement—would have transferred title to Rocky Mountain Power, and would therefore maintain no oversight over the commencement and completion of construction on the property. This scenario is not contemplated by the statute, and is thus an invalid use of the City's eminent domain authority.

*C. The Condemnor Must Retain Ownership and Control of the Property so that the Condemnee May Set Aside the Condemnation After a Reasonable Time Has Passed*

¶20    Other language in Utah Code section 78B-6-520 explains an important part of the rationale for requiring the condemnor to maintain ownership and control of the property. Section 520(1) provides that if construction and use of the property have not been accomplished within a reasonable time, the "condemnee may file an action *against the condemnor* to set aside the condemnation of the entire parcel or any portion upon which construction and use was to have taken place" (emphasis added).

¶21    Reading this section in conjunction with section 507 (requiring the condemnor to be "in charge of" the public use), it

seems readily apparent that the condemning entity must be in charge of the property and the use to which the property will be applied, so that if the condemnor fails to follow proper statutory procedures, the condemnee will have recourse against the condemnor. Under the City's position in this case, for example, should the statutory requirement not be met, Evans (the condemnee) would not be able to recover its property from the City (the condemnor) because Rocky Mountain Power would presumably have title to and control of the property. This would leave Evans without its statutorily guaranteed remedy. We will not read the statute to violate the legislature's intent to provide the condemnee with a remedy when the condemnor has not fulfilled its statutory requirement to commence and complete construction within a reasonable time.

¶22   We note that nothing in the statutes precludes a condemnor from entering into a lease or indemnification agreement with another entity, so long as neither entity exceeds its own powers. *See Utah Cty.*, 2006 UT 33, ¶ 10. If, hypothetically, the City in this case had entered into a 100-year lease with Rocky Mountain Power, and Rocky Mountain Power failed to commence or complete construction within a reasonable time, Evans would still be able to bring suit against the City to recover the property, and the City would presumably be able to allocate damages with Rocky Mountain Power. This solution would have maintained Evans' remedy under the statute.

## CONCLUSION

¶23   We hold that although a property exchange may not be altogether prohibited by our eminent domain statutes, it may not be accomplished in the manner attempted here. The City in this case failed to follow statutory requirements that the *condemnor* be in charge of the public use to which the property will be put and to oversee the construction of that public use. Here, the City was the sole condemnor, but it was Rocky Mountain Power that was to be in charge of the public use of building and operating an electrical substation. This arrangement would leave Evans without recourse to bring an action against the City to recover the property if the substation was not built within a reasonable time. We therefore vacate the district court's Final Judgment of Condemnation. We instruct the district court to order the City to return the property to Evans and resolve Evans' remaining claims for damages and attorney fees.